[Cite as *Haupt v. Haupt*, 2017-Ohio-2719.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| ANDREW W. HAUPT, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-G-0049** |
| HEATHER A. HAUPT, | : | |
| Defendant-Appellant. | : | |

Appeal from the Geauga County Court of Common Pleas, Case No. 11 DC 000358.

Judgment: Affirmed.

*Robert E. Zulandt, Jr.*, Zulandt & Smalheer, 114 East Park Street, Chardon, OH 44024 (For Plaintiff-Appellee).

*Margaret M. Metzinger,* Climaco, Wilcox, Peca, Tarantine & Garofoli Co., 55 Public Square, Suite 1950, Cleveland, OH 44113 (For Defendant-Appellant).


THOMAS R. WRIGHT, J.

{¶1} Appellant, Heather A. Haupt, appeals the trial court's judgment overruling objections to the magistrate's decision and adopting the magistrate's custody recommendation. In addition to evidentiary challenges, she contests the conclusion that the shared parenting plan is no longer in the child's best interest due to parental cooperation issues. We affirm.

{¶2} Appellant and appellee, Andrew W. Haupt, were married for approximately

two years and had one child, Holly, born December 22, 2010. Within one year of birth, Holly was diagnosed with eczema, a recurring condition causing skin irritability including reddening, dryness, and itching. Her condition requires regular application of various salves or creams to reduce discomfort and to moisturize, primarily after a bath or shower. Holly is also allergic to amoxicillin. Over the first five years of her life, Holly experienced other physical ailments.

{¶3} Shortly after Holly's birth, the parties ceased living together, and appellee filed for divorce. Ultimately, the parties' separation agreement and shared parenting plan were incorporated into the final divorce decree. The shared parenting plan provides appellant with custody of the child at least 75 percent of the time and has specific provisions governing the child's care.

{¶4} Even before the final decree was issued, child care disputes developed. Appellant questioned the manner in which appellee addressed Holly's hygiene and various ailments, including the eczema, while she was with him. Appellant questioned the character and parenting ability of various relatives or friends providing childcare.

{¶5} As to the hygiene and health disputes, appellant alleged that when appellee returned Holly to her after he had custody for more than two days, her eczema would often be worse or she would be suffering from another illness. Medical records established that, during the first five years of Holly's life, appellant had taken her to a doctor's office or emergency room approximately 60 times. Thirty visits occurred immediately after appellee had custody. Based upon this, appellant asserted that much of her parenting time was spent helping Holly recover from her health problems.

{¶6} A major dispute centered upon Holly bathing versus showering.

2

Appellee's residence only has shower facilities. He deems this sufficient. In contrast, appellant believes Holly's skin condition requires bathing as opposed to showering. Medical records indicate that some of Holly's doctors think that a shower is generally sufficient except when her eczema is at its worst.

{¶7} In light of appellant's belief that Holly's health suffers when she is with appellee, she demanded that he provide a list of items in his home and other homes he visits with Holly, such as furniture and chemicals, so that she could determine if Holly is allergic. Appellee did not appease.

{¶8} As to the child care disputes, appellant deems appellee's relatives and friends as unqualified to provide care. Appellant objects to appellee's sister-in-law, Terri, as a childcare provider citing obesity, mental illness, alcoholism, and because another child had once fallen into a sewer hole while on Terri's property. Appellee supported the "alcohol" allegation, with claims that Terri kept alcohol in her home and served it when children were present.

{¶9} Given appellant's suspicions about appellee's relatives, if she knew that her child would be seeing those relatives on a particular day, she would call the sheriff's department and ask that a "welfare check" be performed. One of these incidents occurred when appellant knew that Terri and her family would be visiting appellee's home on Easter. During the welfare checks, the deputies never found Holly in danger.

{¶10} The parties also had ongoing disputes concerning appellee's shared parenting time. On multiple occasions, appellee would cancel his visitation claiming that he had to work. When he would attempt to reschedule the lost time, appellant would refuse to do so absent verification from his employer that he was actually working. In

3

addition, at times appellant would unilaterally cancel appellee's parenting time. On more than one occasion, she refused to deliver the child for a weekend visit on the grounds that it was too cold outside. Additionally, rather than scheduling Holly's summer vacation time with her all at once, she would schedule it two or three days at a time, such that the days would directly conflict with appellee's regular visitation time.

**{¶11}** In light of the constant conflict, the parties filed multiple post-decree child custody motions. In 2013, each party moved for termination or modification of the shared parenting plan. Furthermore, in April 2014, appellee filed a contempt motion against appellant, claiming that she was wrongfully depriving him of his time with Holly. Ultimately, the trial court referred the motions to a magistrate who appointed a new guardian ad litem ("GAL") to advance Holly's interests.

**{¶12}** The initial evidentiary hearing on the pending motions was postponed so that appellant could obtain new counsel. Ultimately, the hearing went forward. After testimony of one witness was heard, the parties settled the majority of the custody disputes, but not summer parenting time. The settlement was memorialized and appellee dismissed his contempt motion.

**{¶13}** A subsequent hearing was scheduled to address summer parenting time. However, before evidence was taken, appellant's counsel orally moved to withdraw from the case due to conflict between her and appellant. The magistrate granted the motion to withdraw to reset the hearing, and gave appellant three weeks to obtain new counsel.

**{¶14}** Before the next evidentiary hearing took place, each party filed additional motions. Acting pro se, appellant requested that appellee be held in contempt for

4

violating the terms of their most recent settlement. She further requested that appellee's parenting time be limited to 48 hours per visit. In his new motion, appellee again asked that the shared parenting plan be terminated and that he be named sole custodial parent.

{¶15} At the ongoing hearing, appellant stated that she intended to represent herself. She also moved for dismissal of appellee's supplemental motion for custody, claiming it was not served upon her at her current address. In response, appellee's counsel conceded the motion was mailed to the wrong address, but that appellant was now fully aware of the motion and its substance. In denying the motion to dismiss, the magistrate held that the lack of proper service did not justify dismissal and instead, offered appellant a continuance if she was not prepared to go forward. She declined the continuance, and the hearing proceeded that day and multiple days thereafter.

{¶16} The GAL participated in all of the hearings and filed four reports. In her first three reports, the GAL recommended that the parties continue to follow the shared parenting plan with some modifications. In her last report, however, the GAL deemed the shared parenting no longer feasible because appellant could not communicate with appellee and make joint decisions concerning Holly's welfare. The GAL, therefore, recommended that the shared parenting plan be terminated and that appellee be deemed the sole custodial parent.

{¶17} In June 2015, the magistrate issued a comprehensive decision on all pending motions. The magistrate recommended termination of the shared parenting plan and that appellee be designated the sole custodial parent. In support, the magistrate found appellant's erroneous belief that she is the only person qualified to

make decisions concerning Holly renders her incapable of communicating with or making joint decisions with appellee. The magistrate further found that appellant used the multiple doctor appointments as a pretext to limit appellee's parenting time and raise questions about his ability to provide care. The magistrate also found that appellant used the welfare checks by the sheriff's department to harass appellee.

{¶18} Both sides filed objections to the magistrate's decision. Appellant hired an attorney to represent her during this phase of the proceedings. Besides contesting many of the magistrate's findings of fact, appellant argued that her actions in protecting Holly's welfare are not legally sufficient to warrant termination of the shared parenting plan and argued for less drastic measures.

{¶19} The trial court issued its judgment overruling both parties' respective objections and adopting the magistrate's decision in its entirety.

{¶20} Appellant appeals asserting the following as error:

{¶21} "[1.] The trial court committed reversible error when it adopted the magistrate's decision without conducting an independent, *de novo* review of the magistrate's decision.

{¶22} "[2.] The trial court committed reversible error in adopting the magistrate's decision which terminated the shared parenting plan and designated appellee as the child's sole legal custodial and residential parent, where the trial court overruled appellant's numerous objections and denied appellant's request for a hearing before the trial court, in violation of appellant's due process rights.

{¶23} "[3.] The trial court committed reversible error when it adopted the magistrate's decision over appellant's objections, which terminated shared parenting

6

and designated appellee as the child's sole legal custodial and residential parent, where the trial court failed to consider the best interest of the child factors found in ORC 3109.04(F).

{¶24} "[4.] The trial court committed reversible error when it adopted the magistrate's decision over appellant's objections, where the magistrate relied on the biased and insufficient report and recommendations of the Guardian Ad Litem in terminating shared parenting."

{¶25} Under her first assignment, appellant argues that the trial court committed four errors in adopting the magistrate's decision and overruling her objections and that such shows the trial court failed to conduct a de novo review of the record as required.

{¶26} In reviewing a magistrate's decision, a trial court does not sit in the same manner as an appellate court; rather, it must conduct an independent review of the facts and conclusions made by the magistrate. *Phillips v. Phillips*, 5th Dist. Stark No. 2014CA00090, 2014-Ohio-5439, ¶26; Civ.R. 53(D)(4)(d) ("[i]n ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law.")

{¶27} "'As the ultimate finder of fact, the trial court must make its own factual determinations through an independent analysis of the issues and should *not* adopt the findings of the magistrate unless the trial court fully agrees with them. The trial court's role is to determine whether the magistrate has properly determined the factual issues and appropriately applied the law, and, if the magistrate has failed to do so, the trial court must substitute its judgment for that of the magistrate.'" (Emphasis sic.) *Doody v.*

7

*Doody*, 11th Dist. Lake No. 2006-L-200, 2007-Ohio-2567, ¶27, quoting *Tulley v. Tulley*, 11th Dist. Portage No. 2000-P-0044, 2001 Ohio App. LEXIS 4611, *11-12.

{¶28} Appellant's first argument maintains that the trial court failed to review all of the evidence submitted to the magistrate because in its judgment entry, it states that the magistrate held hearings on six days rather than eight.

{¶29} While appellant's assertion that the trial court failed to list all of the hearing dates is true, the recitation of hearing days is merely precatory. In the third paragraph of its judgment, the trial court expressly states that it read the transcripts of the hearings and considered all of the evidence submitted. Therefore, the record does not support appellant's assertion that the trial court conducted a partial, rather than complete, review of the evidence.

{¶30} Under her second argument, appellant maintains the trial court failed to fully consider her objections because it did not individually analyze each objection raised. However, she fails to cite any authority for the proposition that the trial court must provide separate analysis for each objection. Moreover, the trial court provided an analysis as to its reasons for overruling appellant's factual objections and separate reasons for overruling her legal arguments. Appellant has not demonstrated that the trial court failed to fully consider her objections prior to overruling them.

{¶31} Under her third argument, appellant argues the trial court erred in considering audio recordings of conversations between the parties that appellee made while at a doctor's office and during custody exchanges.

{¶32} Appellant did not generally object to the audio recordings. Instead, appellant objected to but one of the recordings on the basis that it is incomplete but not

8

that it is misleading. Given the lack of a proper objection, the trial court did not err in considering them.

{¶33} Under her last argument, appellant contends that, prior to ruling upon her objections, the trial court should have held an additional evidentiary hearing to afford her the opportunity to present three witnesses whose testimony was wrongfully excluded by the magistrate. However, as will be discussed under the second assignment, exclusion was proper. Thus, an additional evidentiary hearing was unnecessary. Appellant's first assignment is overruled.

{¶34} Under her second assignment, appellant submits that, as a direct result of her decision to represent herself, the magistrate deprived her of due process. In support, she raises three arguments. First, she asserts that the magistrate failed to inform her of the issues being tried.

{¶35} At the outset of the first hearing held after appellant's second attorney withdrew, the magistrate stated all issues that were pending before the trial court, including the two motions that had been filed since the last hearing, one of which was appellee's supplemental request to terminate shared parenting. Therefore, appellant was given adequate notice and her argument is meritless.

{¶36} Appellant's second due process argument states that the magistrate deprived her of her right to present character evidence from three separate witnesses.

{¶37} Evidence of a person's character is generally not admissible to show that she has acted in conformity therewith. *State v. Young*, 3d Dist. Marion No. 9-99-53, 1999 Ohio App. LEXIS 6249, *10 (Dec. 27, 1999); Evid.R. 404(A). An exception is stated in Evid.R. 608(A), and provides that evidence of a witness's character for

9

truthfulness is admissible if that person's character has been attacked during the proceeding. *Id.* at *10-11. Appellant's character for truthfulness, however, was never directly attacked. Accordingly, exclusion of the witnesses was proper.

**{¶38}** Appellant also contends that the magistrate improperly limited the scope of her cross-examination of Terri Haupt, the former sister-in-law who sometimes provided care for Holly. However, she fails to show that the magistrate interfered with relevant inquiry.

**{¶39}** Appellant also claims she was denied a fair trial because the magistrate would not allow her to introduce into evidence the affidavit of a doctor who examined the child for a problem with her genitals. But an affidavit cannot be used as a substitute for direct testimony because it constitutes hearsay. *Tyra v. Tyra*, 1st Dist. Hamilton No. C-140211, 2014-Ohio-5732, ¶8-9. Hence, the magistrate's ruling to exclude the affidavit was correct.

**{¶40}** Under her third due process argument, appellant alleges that while she was attempting to act as her own counsel, the magistrate did not afford her the degree of respect and courtesy that an attorney would be shown. She notes that the magistrate often showed frustration with her while she questioned witnesses.

**{¶41}** Many of appellant's questions were vague, making it difficult to ascertain the evidence sought and how it related to the issues. Often, the magistrate would state that he did not understand her question, and that she needed to give explanation before the question would be allowed. To the extent that many of appellant's questions were difficult to follow, the magistrate did not treat appellant any differently than an attorney asking cryptic or irrelevant questions.

{¶42} Furthermore, taken as a whole, the magistrate gave appellant some leeway in her presentation of evidence. Accordingly, any disadvantage appellant may have had during the evidentiary hearing was due entirely to her decision to represent herself. As appellant has failed to show any due process violation, her second assignment lacks merit.

{¶43} Under her third assignment, appellant challenges the factual predicate for the magistrate's conclusion to terminate the shared parenting plan and award custody to appellee. She contends that the evidence does not support the finding that she is unable to communicate with and cooperate with appellee. According to her, the evidence instead supports a finding that she is a good mother who may have acted overzealously in protecting Holly's health.

{¶44} "* * * [D]ecisions involving the custody of children are accorded great deference on review. *Bates-Brown v. Brown*, 11th Dist. No. 2006-T-0089, 2007 Ohio 5203, at ¶18, citing *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. Thus, any judgment of the trial court involving the allocation of parental rights and responsibilities will not be disturbed absent a showing of an abuse of discretion. *Bates*

{¶45} , supra, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997 Ohio 260, 674 N.E.2d 1159. Further, we review a judgment of the trial court adopting the decision of its magistrate for an abuse of discretion. *Rutherford v. Rutherford*, 11th Dist. No. 2009-P-0086, 2010 Ohio 4195, at ¶10. In addition, an appellate court reviews the trial court's termination of a shared parenting plan for an abuse of discretion. *Matis v. Matis*, 9th Dist. No. 04CA0025-M, 2005 Ohio 72, at ¶4." *In re K.R.*, 11th Dist. Trumbull No. 2010-T-0050, 2011-Ohio-1454, ¶28.

{¶46} "'* * * [A]n abuse of discretion is the trial court's "failure to exercise sound, reasonable, and legal decision making." *State v. Beechler,* 2d Dist. No. 09-CA-54, 2010 Ohio 1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11. When an appellate court is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Id.* at ¶67.' *Ivancic v. Enos*, 11th Dist. Lake No. 2011-L-050, 2012-Ohio-3639, 978 N.E.2d 927, ¶70." *Chapman v. Chapman*, 11th Dist. Lake No. 2015-L-039, 2015-Ohio-4833, ¶22.

{¶47} When a shared parenting plan is jointly filed by the parties, the trial court can terminate that plan "upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children." R.C. 3109.04(E)(2)(c). In deciding whether termination is in the child's best interest, the trial court must consider:

{¶48} "(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

{¶49} "(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

{¶50} "(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

{¶51} "(d) The geographic proximity of the parents to each other; as the

12

proximity relates to the practical considerations of shared parenting;

**{¶52}** "(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem." R.C. 3109.04(F)(2).

**{¶53}** The failure of parents to communicate or cooperate effectively is grounds for terminating a shared parenting plan. *Duricy v. Duricy*, 11th Dist. Trumbull Nos. 2009-T-0078 and 2009-T-0118, 2010-Ohio-3556, ¶43; R.C. 3104.09(F)(2)(a).

**{¶54}** As noted previously, appellant filed a pro se motion to modify the existing shared parenting plan limiting appellee's custody to 48 hours at any given time. This motion was based upon her assertion that appellee did not take proper care of the child, and that she would become ill when his time with her was over. Yet, appellant did not present any direct evidence demonstrating that the child's health problems were caused by appellee in any respect.

**{¶55}** Notwithstanding the lack of any direct correlation, appellant took the child to doctor's appointments and emergency rooms approximately 60 times during the first five years of her life, and over half of the visits occurred immediately after appellee had custody. In many of these visits, appellant expressly told the doctor that the child had recently been with appellee. In addition, appellant unreasonably demanded that appellee provide a detailed list of items in his residence and others', for the purpose of determining whether the child was allergic to something in their homes.

**{¶56}** Given the foregoing, the magistrate reasonably inferred that appellant was wrongfully attempting to show that appellee was not providing proper care for the child. It was also reasonable to infer that appellant unreasonably asserts excess control over parenting decisions.

13

**{¶57}** Moreover, appellant would deny appellee scheduled time for inappropriate reasons, such as it was too cold for the child to leave her residence. Appellant also used abusive language in addressing appellee, and engaged in tirades against him while Holly was present.

**{¶58}** Taken as a whole, there is credible evidence that appellant was overbearing and operated as a dictator rather than a partner.

**{¶59}** Under her fourth assignment, appellant maintains that the magistrate erred in relying in any way upon the GAL's final recommendation claiming bias. In support, appellant notes that the GAL's recommendation is based, at least in part, on her belief that appellant accused appellee of sexual abuse. The GAL's fourth report states a basis for her belief that appellant, at the very least, raised the issue with one of Holly's doctors. Accordingly, this argument is baseless.

**{¶60}** Moreover, although the magistrate referenced the GAL's recommendation in his decision, it does not appear that the magistrate's decision was influenced in any way by a false abuse claim, and the same can be said of the trial court's judgment.

**{¶61}** Appellant separately argues that the GAL failed to investigate a laundry list of issues. Obviously, a GAL's report can always contain more. Thus, merely noting omissions does not support appellant's premise. The GAL's report contains a plethora of relevant discussion in support of her decision. To the extent that appellant deemed the omitted issues relevant, she had more than ample opportunity to present evidence.

**{¶62}** As a final issue regarding the GAL, appellant claims the magistrate erred in appointing a new guardian ad litem to make a recommendation as to the post-decree motions. She asserts that the magistrate should have re-appointed the same guardian

14

ad litem who worked on the action prior to the final divorce decree. However, the new GAL was appointed in a magistrate's order issued on April 2, 2014. Appellant did not object to the appointment until May 13, 2014, when she moved for reinstatement of the prior guardian. Since Civ.R. 53(D)(2)(b) states that a request to vacate a magistrate's order must be filed within ten days of the order, appellant's objection was untimely, and she is precluded from re-arguing the issue on appeal. *O'Brien v. O'Brien* 8th Dist. Cuyahoga No. 98336, 2012-Ohio-5185, ¶8. Accordingly, the fourth assignment is without merit.

{¶63} The judgment of the Geauga County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents.