[Cite as *Lichtenstein v. Lichtenstein*, 2020-Ohio-5080.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

RYAN LICHTENSTEIN,  :

    Plaintiff-Appellee,  :

                         No. 108854

    v.  :

MELISSA LICHTENSTEIN,  :

    Defendant-Appellant.  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED
**RELEASED AND JOURNALIZED:** October 29, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-16-362842

---

*Appearances:*

McCarthy Lebit Crystal & Liftman Co., L.P.A., and Richard
A. Rabb, *for appellee.*

Law Offices of Anne S. Magyaros, L.L.C., and Anne S.
Magyaros, *for appellant.*

MARY J. BOYLE, P.J.:

{¶ 1} Defendant-appellant, Melissa Lichtenstein ("wife"), appeals from the

trial court's judgment sustaining her objections in part and overruling them in part

with respect to issues in the divorce between wife and plaintiff-appellee, Ryan Lichtenstein ("husband").  Wife raises six assignments of error for our review:

> 1. The trial court abused its discretion in its determination of child support.
>
> 2. The trial court abused its discretion in finding separate property interests for husband.
>
> 3. The trial court abused its discretion in failing to divide marital debts and assets equally.
>
> 4. The trial court abused its discretion in awarding attorney fees.
>
> 5. The trial court erred in terminating temporary orders when there was no change of circumstances.
>
> 6. The trial court erred in denying as moot the appellant's motion to set aside magistrate's order filed on February 19, 2018[,] and appellant's motion for modification of support and temporary orders filed on January 15, 2019 and February 28, 2019.

**{¶ 2}** We find merit to wife's first, fourth, and sixth assignments of error. We also find merit in part to wife's third assignment of error.  Wife's second assignment of error is overruled, and her fifth assignment of error is premature.  We therefore affirm in part, reverse in part, and remand.

## I. Procedural History and Factual Background

**{¶ 3}** Husband and wife were married on June 15, 2012, and had one child born as issue of their marriage (d.o.b. May 27, 2013).  Husband filed for divorce on July 1, 2016.  Wife answered and filed a counterclaim for divorce from husband.

**{¶ 4}** On April 20, 2017, wife filed a motion for temporary support.  The parties entered into an agreed judgment entry where husband agreed to pay wife's charges on a credit card up to $665 each month, wife's car insurance expenses, all

work-related day care expenses for the child, and health insurance premiums for wife and the child.

{¶ 5} The parties entered into a shared parenting plan just before their final divorce hearing began, where they agreed to have equal parenting time with their child and make joint decisions on all parenting matters. However, they did not agree on child support and left that issue for the court to decide.

{¶ 6} The magistrate held final hearings on the parties' divorce and related matters over a period of four days: December 15, 2017, January 31, February 5, and February 9, 2018. At the conclusion of trial, the magistrate granted husband's motion to modify the temporary support orders in part. The magistrate stated that "after listening to the evidence presented at trial, [husband's] motion should be granted effective immediately as to the $665.00 per month." The magistrate left the remaining temporary orders in place. The magistrate's order was journalized on February 9, 2018. On February 19, 2018, wife filed a motion to set aside the magistrate's order pursuant to Civ.R. 53(D)(2)(b).

{¶ 7} The magistrate issued his decision on all remaining matters eight months later, on October 19, 2018. Wife filed timely objections (and supplemental objections) to the magistrate's decision, raising 40 objections.

{¶ 8} On January 15, 2019, wife filed a motion to modify the temporary support orders pursuant to Civ.R. 75(N), alleging that there had been a change in circumstances since the temporary orders went into effect. Wife filed an amended

motion on February 28, 2019, correcting a mistake that she made in her original motion.

{¶ 9} On July 8, 2019, the trial court sustained wife's first objection, finding that the magistrate erred when he forgot to include the list of exhibits that were admitted into evidence. But the trial court found that it was clear from the magistrate's decision that he considered all relevant evidence when making his decision. The trial court overruled wife's remaining 39 objections. In the same judgment entry that overruled wife's objections, the trial court issued the final divorce decree, granting the parties a divorce and approving their shared parenting plan.[1]

{¶ 10} On July 9, 2019, the trial court also denied as moot wife's motion to set aside the magistrate's order terminating the monthly $665 payment towards the credit card and wife's motion to modify the temporary support orders.

{¶ 11} It is from these judgments that wife now appeals.

## II. Child Support

{¶ 12} In her first assignment of error, wife argues that the trial court abused its discretion when it determined child support. She maintains that the trial court abused its discretion (1) by failing to name husband obligor, (2) in determining husband's income, (3) in allocating equal responsibility for the child's uncovered

---

[1] We find it troubling that the trial court overruled wife's objections in the same judgment as the final divorce decree. The parties will likely have to share the final decree many times in the coming years to prove that they are divorced. We do not believe that the issues the parties had in their marriage or during the divorce should be a part of the final divorce decree.

medical expenses, and (4) in allocating the tax benefit of claiming the child to husband.

{¶ 13} When a trial court reviews a magistrate's decision, it "does not sit in the same manner as an appellate court; rather, it must conduct an independent review of the facts and conclusions made by the magistrate." *Haupt v. Haupt*, 11th Dist. Geauga No. 2015-G-0049, 2017-Ohio-2719, ¶ 26, citing *Phillips v. Phillips*, 2014-Ohio-5439, 25 N.E.3d 371, ¶ 26 (5th Dist). Civ.R. 53(D)(4)(d) provides in relevant part that "the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." This "independent review" requires the court to "'conduct a de novo review of the facts and an independent analysis of the issues to reach its own conclusions about the issues in the case.'" *In re I.R.Q.*, 8th Dist. Cuyahoga No. 105924, 2018-Ohio-292, ¶ 23, quoting *Radford v. Radford*, 8th Dist. Cuyahoga Nos. 96267 and 96445, 2011-Ohio-6263, ¶ 13. "The trial court must decide 'whether the [magistrate] has properly determined the factual issues and appropriately applied the law, and where the [magistrate] has failed to do so, the trial court must substitute its judgment for that of the [magistrate].'" *Gobel v. Rivers*, 8th Dist. Cuyahoga No. 94148, 2010-Ohio-4493, ¶ 16, quoting *Inman v. Inman*, 101 Ohio App.3d 115, 118, 655 N.E.2d 199 (2d Dist.1995). It is generally presumed that the trial court properly conducted an independent review of the magistrate's decision unless the party asserting the error affirmatively shows otherwise. *Hartt v. Munobe,* 67 Ohio St.3d 3, 7, 615 N.E.2d 617

(1993) ("An appellate court reviewing a lower court's judgment indulges in a presumption of regularity of the proceedings below.").

{¶ 14} An appellate court's standard of review is whether the trial court abused its discretion in adopting the magistrate's decision. A trial court's ruling on objections to a magistrate's decision will not be reversed absent an abuse of discretion. *Gobel* at *id.* Further, when reviewing the propriety of a trial court's determination in a domestic relations case, an appellate court generally applies an abuse-of-discretion standard. *Gray v. Gray*, 8th Dist. Cuyahoga No. 95532, 2011-Ohio-4091, ¶ 7, citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

{¶ 15} When reviewing the child support issues in this case, the trial court did not conduct an independent review of the magistrate's decision. Instead, the trial court simply found that "the magistrate was in the best position to weigh the evidence before him." The trial court abused its discretion in doing so.

{¶ 16} As this court explained in *In re R.C.*, 8th Dist. Cuyahoga No. 96396, 2011-Ohio-4641:

> [T]he court must conduct "a de novo review of any issue of fact or law that a magistrate has determined when an appropriate objection is timely filed. The trial court may not properly defer to the magistrate in the exercise of the trial court's de novo review. The magistrate is a subordinate officer of the trial court, not an independent officer performing a separate function."

*Id.* at ¶ 11, quoting *Knauer v. Keener*, 143 Ohio App.3d 789, 793-794, 758 N.E.2d 1234 (2d Dist.2001).

**{¶ 17}** After reviewing the trial court's decision on the four child support issues raised by wife, we find that the trial court improperly deferred to the magistrate. Although the trial court did not defer to the magistrate on wife's objections relating to the allocations of the tax dependency and uncovered medical expenses, these issues are inextricably intertwined with the remaining child support issues and, therefore, we cannot reach the merits of them until the trial court independently addresses all of the child support issues without deference to the magistrate's decision.

**{¶ 18}** Accordingly, wife's first assignment of error is sustained.

### III. Separate Property Interests

**{¶ 19}** In her second assignment of error, wife argues that the trial court erred when it found that husband's Charles Schwab IRA was his separate property and that husband had "any separate equity" in the real estate located on Huron Road.

**{¶ 20}** In determining whether assets are marital or separate, the trial court is governed by R.C. 3105.171. Marital property generally includes all property acquired by either party during the marriage as well as the appreciation of separate property due to the labor, monetary, or in-kind contributions of either party during the marriage. R.C. 3105.171(A)(3)(a)(i) and (iii). Trial courts must divide marital property equitably between the spouses. R.C. 3105.171(B). Usually, this requires that marital property be divided equally. R.C. 3105.171(C)(1). "However, if the trial court determines that an equal division would produce an inequitable result, it must

divide the property in a way it deems equitable." *O'Rourke v. O'Rourke*, 4th Dist. Scioto No. 08CA3253, 2010-Ohio-1243, ¶ 15; R.C. 3105.171(C)(1).

{¶ 21} Marital property does not include separate property. R.C. 3105.171(A)(3)(b). "Property that is acquired during the marriage is presumed to be marital property unless it can be shown to be separate." *Ockunzzi v. Ockunzzi*, 8th Dist. Cuyahoga No. 86785, 2006-Ohio-5741, ¶ 17. "Separate property" includes all real and personal property that was acquired by one spouse prior to the marriage and any "passive income and appreciation acquired from separate property by one spouse during the marriage." R.C. 3105.171(A)(6)(a)(ii) and (iii). Separate property commingled with marital property remains as separate property unless it becomes no longer traceable. R.C. 3105.171(A)(6)(b). Thus, traceability becomes the focus in determining whether separate property has lost its character after being commingled with marital property. *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994). The party seeking to establish an asset as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset as separate property. *Hildebrand v. Hildebrand*, 5th Dist. Morrow No. 954, 2003-Ohio-3654, ¶ 11, citing *Zeefe v. Zeefe*, 125 Ohio App.3d 600, 614, 709 N.E.2d 208 (8th Dist.1998).

{¶ 22} Once a trial court has classified the property as either marital or separate, review of that determination is limited to the standard of manifest weight of the evidence. *Marcum v. Marcum*, 116 Ohio App.3d 606, 612, 688 N.E.2d 1085 (2d Dist.1996). "This standard of review is highly deferential and [only] some

evidence is sufficient to sustain the judgment and prevent a reversal." *Barkley v. Barkley*, 119 Ohio App.3d 155, 159, 694 N.E.2d 989 (4th Dist.1997).

{¶ 23} The manifest weight standard in a civil case is the same as it is in a criminal case. *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. In *Eastley*, the Ohio Supreme Court explained:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [factfinder] that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."

*Id.* at ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 24} When conducting a manifest weight review, this court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Thompkins* at ¶ 20.

**A. Charles Schwab IRA**

{¶ 25} Wife maintains that the trial court abused its discretion when it determined that husband met his burden of establishing the Charles Schwab Roth IRA was his separate property.

{¶ 26} Husband testified that he had the IRA prior to the marriage and that he made no contributions to it during the marriage. He partially corroborated that testimony with documentation from Charles Schwab showing that the account existed prior to the marriage and that he did not make contributions to the account from 2015 through 2017. The documentation showed husband's IRA account value as of June 15, 2012, the date the parties got married. The documentation also showed the year-end statements from 2015 through 2017, which showed that husband did not make any contributions during those years.

{¶ 27} Wife argues, however, that husband failed to submit any documentation to support his testimony for the years 2012 to 2015. Husband testified that he tried to get the documents for those years but because Charles Schwab had changed the accounts, he could not get them. The trial court found husband's testimony that he did not contribute to the IRA during the marriage to be credible with respect to the years for which he did not have documentation.

{¶ 28} It is important to remember that a party seeking to establish the separate property has the burden of proof only by a preponderance of the evidence. *Matic v. Matic*, 11th Dist. Geauga No. 2000-G-2266, 2001 Ohio App. LEXIS 3360, 9 (July 27, 2001). "'Preponderance of the evidence means the greater weight of evidence that is necessary to destroy the equilibrium.'" *Reed v. Reed*, 3d Dist. Allen No. 1-09-63, 2010-Ohio-4550, ¶ 10, quoting *State v. Stumpf*, 32 Ohio St.3d 95, 102, 512 N.E.2d 598 (1987). "It is that proof which leads the trier of fact to find that the existence of the contested fact is more probable than its nonexistence." *Reed* at *id*.

Preponderance of the evidence is a lesser standard than clear and convincing evidence and beyond a reasonable doubt. *See Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus ("Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.").

{¶ 29} In *Matic*, the appellee could only physically document that a portion of her premarital funds were placed in a joint account to be used as a down payment on their marital home. The appellant argued that appellee failed to corroborate her testimony with financial statements showing that her remaining premarital funds were also placed in the joint account. The Eleventh District found that financial statements were not the only way that wife could prove that all her premarital funds were used as a down payment on the parties' marital residence. *Id.*

{¶ 30} After review, we find that the trial court did not abuse its discretion when it adopted the magistrate's decision with respect to the Charles Schwab IRA. We agree that husband established by a preponderance of the evidence that the IRA was his separate property. We further note that wife could have subpoenaed the Charles Schwab records herself to impeach husband's testimony, but she did not do so. Thus, we find no merit to wife's arguments regarding husband's IRA.

**B. Real Estate**

{¶ 31} Wife argues that the trial court abused its discretion in determining husband's separate property interest in the Huron Road property. The trial court found that the Huron Road property was husband's separate property and that the decrease in the principal owed on the mortgage at the time of the marriage commencement and the principal owed as of December 1, 2017, the marriage termination, was $10,362.50. The trial court found this amount to be the marital equity in the property. The trial court therefore awarded wife $5,181.25, for her share of this equity.

{¶ 32} Wife argues that based on the evidence at trial, the equity should have been $41,346 to $44,984, because husband testified that the current value of the home was $146,187 and $104,841.18 was owed on the mortgage. Husband testified that he acquired the property in February 2006, and he submitted a warranty deed into evidence establishing this fact. He also established that the mortgage owed on the property as of the date of the marriage was $115,283.13, and that the mortgage owed as of the termination of the marriage was $104,875.63. Thus, the parties paid a total of $10,362.50 towards reducing the principal of the mortgage during the marriage. The trial court further found that wife did not claim or present any evidence that the home appreciated due to the labor, monetary, or in-kind contribution of herself or husband.

{¶ 33} Wife further argues that husband failed to present any evidence of equity or value in the Huron Road property at the time of the commencement of the

marriage. She therefore contends that the trial court abused its discretion by finding that the property was husband's separate property. We disagree. Husband acquired the home over six years before the commencement of the marriage. We agree that to establish the marital equity in property, parties generally present evidence of the value of the home at the commencement of the marriage and the value of the home at the termination of the marriage. *See Al-Mubarak v. Chraibi*, 8th Dist. Cuyahoga No. 101392, 2015-Ohio-1018, ¶ 50; *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, ¶ 33; *Matic*, 11th Dist. Geauga No. 2000-G-2266, 2001 Ohio App. LEXIS 3360, at 16. But "[r]igid rules to determine value cannot be established, as equity depends on the totality of the circumstances." *Baker v. Baker*, 83 Ohio App.3d 700, 702, 615 N.E.2d 699 (9th Dist.1992). We are also cognizant that a trial court has broad discretion in fashioning an equitable division of marital property. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218, 450 N.E.2d 1140 (1983). After review in this case, we cannot say that the trial court abused its discretion in valuing the marital equity as the amount the mortgage principal decreased during the marriage. The marriage was of relatively short duration (approximately four years). And again, wife did not claim or present any evidence that the home appreciated due to the labor, monetary, or in-kind contribution of herself or husband.

{¶ 34} Wife further argues that if husband had not refinanced the property during the pendency of the divorce and rolled over the closing costs into the mortgage, the amount owed as of the termination of the marriage would have been

$101,211.90 rather than $104,841.18 and thus, the marital equity should have been $3,629.28 more. Wife testified, however, that she fully consented to the refinancing of the Huron Road property. Therefore, she cannot claim now that husband decreased the amount of marital equity by doing so. We find no merit to wife's claims about the Huron Road property.

{¶ 35} Having found no merit to either issue in wife's second assignment of error, we overrule it.

## IV. Marital Debts and Assets

{¶ 36} In her third assignment of error, wife argues that the trial court abused its discretion in failing to divide the marital debts and assets equally. She raises six issues with respect to this assigned error.

### A. Retirement Assets

{¶ 37} Wife argues that the trial court abused its discretion when it ordered that a qualified domestic relations order should issue from husband's 401K for the exact sum of $19,690.14, rather than allow her to receive the benefits and gains on that sum until distribution.

{¶ 38} The trial court determined that the marital portion of husband's retirement account amounted to $51,409.18, and that the marital portion of wife's two retirement accounts were $10,517.98 and $1,510.92. From these numbers, the trial court found that wife was entitled to $19,690.14 from husband's retirement account. R.C. 3107.171(A)(3)(a)(ii) states that marital property is the interest that either spouse currently has in "the retirement benefits of the spouses, and that was

acquired by either or both of the spouses during the marriage." That is the amount the trial court awarded wife. Accordingly, we find no merit to wife's argument.

## B. Husband's Unused Sick and Vacation Time

{¶ 39} Wife argues that the trial court abused its discretion when it failed to find that husband's accrued sick and vacation time were marital assets. The trial court found that because husband would not be entitled to compensation for unused sick time while he was still employed or upon his separation of employment, wife was not entitled to a monetary award for husband's unused sick time. Regarding husband's unused vacation time, the trial court found that because husband would not be paid for it until he leaves his employment, that wife was not entitled to an award for that either.

{¶ 40} In *Weller v. Weller*, 11th Dist. Geauga No. 2001-G-2370, 2002-Ohio-7125, the Eleventh District explained:

> [S]everal Ohio appellate districts have determined that accrued sick leave benefits resemble deferred bonus payments or pension plan accumulations and, as such, qualify as an interest in property subject to division as a marital asset under R.C. 3105.171(A)(3)(a)(ii). *Herrmann v. Herrmann* (Nov. 6, 2000), 12th Dist. Nos. CA99-01-006 and CA99-01-011, 2000 Ohio App. LEXIS 5146, *9; *Hartley v. Hartley* (Apr. 24, 1998), 2d Dist. No. 16668, 1998 Ohio App. LEXIS 1745, *3-4; *Pearson v. Pearson* (May 20, 1997), 10th Dist. No. 96 APF08-1100, 1997 Ohio App. LEXIS 2223, 1997 WL 275496, 8-9. The rationale for this principle is that "since sick leave benefits, like deferred bonus payments or pension plan accumulations, are accumulated by the employee during the employment in exchange for past services rendered, they are essentially deferred compensation earned during working years." *Herrmann*[,] 2000 Ohio App. LEXIS 5146 at *10. Hence, if the sick leave benefit is earned by the employee spouse during the marriage, then it logically belongs to the marital estate.

*Id.* at ¶ 24. The same rationale applies to accumulated vacation time. *Bergman v. Bergman*, 2d Dist. Montgomery No. 25378, 2013-Ohio-715, ¶ 13.

{¶ 41} In this case, wife submitted evidence into the record that husband earns $35.14 per hour and had accrued 495.37 hours of sick time and 185.33 hours of vacation time. The trial court found, however, that the evidence established that husband's employer does not pay employees for "unused sick time either during employment or upon termination of employment." If husband is not entitled to compensation for unused sick time, then there is no marital value to it, and the trial court did not abuse its discretion regarding unused sick time.

{¶ 42} With respect to husband's unused vacation time, he testified that he was not aware of any policy where he could "cash out" the unused vacation time while he was employed with the company. But he agreed that when he separates from his employer, he will get paid for any unused vacation time. Courts have held that there is marital value in unused vacation time if a spouse has the right to receive compensation for the value of it upon termination or retirement. *Bergman* at *id.*; *Pearson*, 10th Dist. Franklin No. 96APF08-1100, 1997 Ohio App. LEXIS 2223, at 24. Therefore, the trial court in this case abused its discretion when it based its decision on the fact that husband would not receive compensation for his unused vacation time until he left his employment. Because husband will be paid for his unused vacation time when he separates from his employment, wife is entitled to her share of husband's vacation time that was accrued during the marriage. Upon

remand, the trial court should determine the value of husband's unused vacation time that was accrued during the marriage and award wife her share of that amount.

### C. Real Estate and IRA

{¶ 43} Wife also argues that the trial court erred when it failed to award her a portion of the Huron Road property and the Charles Schwab Roth IRA. We previously addressed these arguments and do not need to repeat them here.

### D. Wife's Marital Debt

{¶ 44} Wife maintains that the trial court abused its discretion when it ordered her to pay her medical debts that she incurred during the marriage.

{¶ 45} The trial court ordered that all of husband's health savings account ($6,628), which was 100% marital, be awarded to wife so that she could pay her medical debt that equaled $6,101.28. Despite awarding the entire health savings account to wife, the trial court determined that wife was entitled to $3,314.05 for her share of it. Because $3,314.04 was husband's share of the asset, the trial court ordered that husband's share of the health savings account be offset against the portion of marital equity that wife would receive from the Huron Road property. Wife claims that the result of the offset was that her medical debt ended up being her separate debt. We disagree. In essence, husband and wife equally paid half of wife's medical debt and received half of the health savings account. In doing so, we find no abuse of discretion on the part of the trial court.

**E. Husband's PNC Account**

{¶ 46} Wife argues that the trial court erred when it failed to find that husband depleted the PNC account prior to trial. She maintains that the trial court should have charged "[h]usband with spending down marital assets prior to trial."

{¶ 47} Wife asserts that the PNC checking account had $14,853.63 in it at the commencement of the divorce. She points to the fact that husband made withdrawals for the Horseshoe Casino and other casinos amounting to $6,397. However, husband testified and submitted evidence documenting his testimony that from September 2015 until December 2017, wife charged $13,936.94 on husband's credit card, which he paid from the PNC account. Husband also established that he paid for nearly all of the child-care expenses during the pendency of the divorce, which were approximately $900 per month.

{¶ 48} The magistrate found that neither party violated the mutual restraining orders. The magistrate further found that husband "shouldered a disproportionate share of the family's expenses even after separation, to his financial detriment." The magistrate explained that husband "generously agreed during 2017 to provide [wife] with a monthly 'allowance' as a form of [t]emporary support, despite the fact that [wife] lives with her parents rent-free, despite the fact the parties had been separated from each other for nearly two years at that point, and despite the fact [wife] previously quit a higher-paying job for no apparent, legitimate reason." The trial court approved and adopted the magistrate's decision with respect to the PNC account. Therefore, we disagree with wife that the trial court

abused its discretion when it did not "charge" husband with "spending down the marital assets prior to trial."

{¶ 49} However, with respect to the 2016 tax refunds that were deposited into the PNC account in October 2017, $4,856 from federal and $233 from the state, we agree with wife that they were marital property subject to division. *See Frye v. Frye*, 10th Dist. Franklin No. 93APF09-1218, 1994 Ohio App. LEXIS 1424 (Mar. 31, 1994) (tax refund is a marital asset). Accordingly, upon remand, the trial court should divide the 2016 tax refunds equitably and award wife her share of them.

### F. The 529 College Account

{¶ 50} Wife contends that the trial court erred when it failed to equally divide the College Advantage 529 account that husband opened for the benefit of their child. Wife's argument relating to this issue is two sentences. She also cites no authority in support of her argument. We therefore summarily overrule it.

{¶ 51} Wife's third assignment of error is sustained in part with respect to husband's vacation time accrued during the marriage and overruled in part with respect to all remaining issues.

## V. Attorney Fees

{¶ 52} In her fourth assignment of error, wife argues that the trial court erred when it ordered her to pay $3,000 of husband's attorney fees, which amounted to a total of $62,055.80. With respect to this issue, the trial court overruled wife's objection and found that the magistrate "had wide discretion regarding whether to

award attorney fees and that the [m]agistrate was in the best position to weigh the evidence before him."

{¶ 53} Just as we found with respect to wife's first assignment of error, the trial court abused its discretion when it failed to independently review the magistrate's decision with respect to attorney fees. Simply put, the trial court cannot defer to the magistrate. *In re I.R.Q.*, 8th Dist. Cuyahoga No. 105924, 2018-Ohio-292, at ¶ 23, quoting *Radford*, 8th Dist. Cuyahoga Nos. 96267 and 96445, 2011-Ohio-6263, at ¶ 13.

{¶ 54} Accordingly, wife's fourth assignment of error is sustained.

## VI. Temporary Orders

{¶ 55} In her fifth assignment of error, wife argues that the trial court erred when it terminated the temporary orders when there was no change in circumstances. In her sixth assignment of error, she argues that the trial court erred when it denied her motion to set aside the magistrate's order and her motion to modify temporary support as moot. Wife maintains that the trial court should reinstate the temporary orders from February 9, 2018, to the date of the final divorce decree, July 5, 2019. In the alternative, she argues that the trial court should have granted her motion to modify temporary support.

{¶ 56} Temporary orders are subject to appellate review once a final order has been entered by the court. *Millstein v. Millstein*, 8th Dist. Cuyahoga Nos. 79617, 79754, 80184, 80185, 80186, 80187, 80188, and 80963, 2002-Ohio-4783, ¶ 28 (temporary support orders become subject to review after the court enters its final

judgment.); *Dilacqua v. Dilacqua*, 88 Ohio App.3d 48, 57, 623 N.E.2d 118 (9th Dist.1993) ("Temporary support orders, like other interlocutory orders, are reviewable after entry of a final decree disposing of the action in which they were entered.").

{¶ 57} Husband argues that wife did not preserve this argument because she did not object to it under Civ.R. 53 when she filed her other objections. But wife timely filed a motion to set aside the magistrate's order terminating the $665 per month, which was 17 months before the trial court issued the final judgment, and she filed a motion to modify temporary support five months before the final judgment. Therefore, she preserved the issues relating to temporary support.

{¶ 58} The parties entered an agreed judgment entry for temporary support on July 11, 2017. Husband agreed to pay $665 per month of wife's charges on a credit card. Husband also agreed to pay all work-related, child-care expenses, health-insurance coverage for wife and the child, and wife's car insurance. In October 2017, prior to the final divorce trial, husband moved to modify the temporary support, arguing that he had reason to believe that wife had obtained new employment since the agreed temporary orders had gone into effect. At the conclusion of trial, the magistrate heard arguments on husband's motion and modified the temporary orders. The magistrate ordered that the $665 payments be terminated immediately but left the remaining orders intact.

{¶ 59} Within ten days of the magistrate's order terminating the $665 temporary support payments to wife, she filed a motion to set aside the magistrate's

order pursuant to Civ.R. 53(D)(2)(b), arguing that the magistrate erred when he granted husband's motion to modify temporary support because there had not been a change in circumstances. Wife maintained in her motion to set aside the magistrate's order that there had not been a change of circumstances because she had been working at the same place of employment, earning the same salary, since the magistrate issued the agreed temporary support order in July 2017.

{¶ 60} Wife also filed a motion to modify temporary support pursuant to Civ.R. 75(N) on January 15 and February 28, 2019, arguing that there had been several changes since the magistrate's last order. Specifically, wife contended, inter alia, that husband's income had increased, the parties now had "50/50 time sharing of their child which was not the case at the time of the temporary orders," work-related, child-care expenses had decreased significantly, and husband was no longer paying wife's health insurance expenses.

{¶ 61} Civ.R. 53(D)(2)(b) states:

Any party may file a motion with the court to set aside a magistrate's order. The motion shall state the moving party's reasons with particularity and shall be filed not later than ten days after the magistrate's order is filed. The pendency of a motion to set aside does not stay the effectiveness of the magistrate's order, though the magistrate or the court may by order stay the effectiveness of a magistrate's order.

{¶ 62} Civ.R. 75(N)(1) provides:

When requested in the complaint, answer, or counterclaim, or by motion served with the pleading, upon satisfactory proof by affidavit duly filed with the clerk of the court, the court or magistrate, without oral hearing and for good cause shown, may grant a temporary order regarding spousal support to either of the parties for the party's

sustenance and expenses during the suit and may make a temporary order regarding the support, maintenance, and allocation of parental rights and responsibilities for the care of children of the marriage, whether natural or adopted, during the pendency of the action for divorce, annulment, or legal separation.

{¶ 63} On July 8, 2019, just after it issued the final divorce decree, the trial court denied wife's motions to set aside the magistrate's decision and to modify temporary support as moot. The trial court explained that all matters were addressed in the final decree. The issues, however, are whether the temporary support should have continued from the date of the final divorce hearing (in February 2018) until the court issued the final divorce decree (in July 2019), and whether it should have been modified upon wife's request. The trial court did not issue the divorce decree until 17 months after the final hearing. Wife received over $9,000 less in temporary support during this time. Therefore, the matter was not moot, and the trial court should have addressed wife's motions.

{¶ 64} We therefore sustain wife's sixth assignment of error and reverse and remand for the trial court to address wife's motions regarding temporary support and to hold a hearing if necessary so that husband and wife can present their evidence and arguments. However, we find wife's fifth assignment of error regarding the *merits* of the magistrate's order modifying the temporary support to be premature because the trial court has not yet addressed this issue.

{¶ 65} Judgment affirmed in part and reversed in part. With respect to wife's first and fourth assignments of error, this matter is remanded for the trial court to conduct an independent review of the magistrate's decision on the matters

of child support and attorney fees. Upon remand, the trial court must also address the matter of husband's vacation time; i.e., determine whether any of it was accrued during the marriage, value it, and equitably divide any marital portion, and address the issue of the parties' 2016 tax refunds and equitably divide them. Finally, the trial court must also address the issue of temporary support that wife raised in her motions. We also strongly recommend, for the parties' benefit, that the trial court issue a new final divorce decree addressing all issues in one judgment and rule on wife's objections in a separate judgment.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MARY J. BOYLE, PRESIDING JUDGE

LARRY A. JONES, SR., J., and
EILEEN A. GALLAGHER, J., CONCUR