[Cite as *Bandza v. Bandza*, 2021-Ohio-4011.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JURGITA BANDZA,                         :

    Plaintiff-Appellee,            :

                                       No. 110259

    v.                             :

ARTURAS BANDZA,                         :

    Defendant-Appellant.           :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED
**RELEASED AND JOURNALIZED:** November 10, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Division of Domestic Relations
Case No. DR-19-377306

---

### *Appearances:*

Joyce E. Barrett and James P. Reddy, Jr., *for appellee.*

Morganstern MacAdams & DeVito Co., L.P.A. and Luke
T. Brewer, *for appellant.*

---

ANITA LASTER MAYS, P. J.:

{¶ 1} Defendant-appellant, Arturas Bandza ("Arturas") appeals the trial court's judgment entry of divorce. Finding limited merit to the appeal, we reverse the portion of the trial court's judgment entry naming Arturas as the health

insurance obligor, affirm in all other respects, and remand the case for further proceedings.

**{¶ 2}** Arturas and plaintiff-appellee Jurgita Bandza ("Jurgita") married in February 2009 and have two minor children together. Jurgita filed a complaint for divorce on June 24, 2019. The trial court issued a temporary support order. Jurgita subsequently filed a motion to show cause claiming that Arturas had missed monthly support payments. She also moved for attorney fees and for an increase in the temporary-support order based on her decrease in income. In October 2020, the magistrate issued an order finding Arturas in contempt for failure to file a financial disclosure form, awarded attorney fees to Jurgita, and denied the motion to increase temporary support. The magistrate calculated Arturas's monthly support payment to be $992.84 per month. The parties did not file objections to the magistrate's decision. The matter proceeded to a trial at which Arturas proceeded pro se.

**{¶ 3}** While married, the Bandzas lived together on Aberdeen Road in Rocky River. The couple had multiple properties, none of which were titled in Arturas's name. The Aberdeen Road property was owned by a family friend, Linas Mockus ("Mockus"), who testified at trial. In 2012, Jurgita executed a land-installment contract on the property but the Bandzas were delinquent in the monthly payments on the contract. There were also property taxes owed on the property. At the time of trial, the house was listed for sale for $559,000. Mockus testified he had been advancing the couple money to pay their monthly credit card

payments with an agreement that he would deduct the delinquencies and advances from the sales proceeds once the house was sold.

{¶ 4} The Bandzas also had a house on Lake Road in Rocky River that was used as an Airbnb property until the COVID-19 pandemic halted travel, and a five-unit apartment building on Cove Avenue in Lakewood, both of which were titled in Jurgita's name. The apartment building is in a high-demand area, but needed work before it could be rented to tenants.

{¶ 5} In January 2020, Arturas removed all the furniture from the Aberdeen Road house, except for the children's furniture, and relocated to Florida. In Florida, Arturas was employed by a church making an annual salary of $52,500 with health insurance. He was also a licensed real estate attorney in Ohio. Jurgita managed the couple's Airbnb until the COVID-19 pandemic and the trial court noted that she and the children moved to the Aberdeen Road house because Arturas removed the furniture from the other residence. The court further noted that Jurgita's employment prospects were minimal given her "minimal skills and a heavy foreign accent complicating her communication ability."

{¶ 6} The trial court granted the parties divorce by judgment entry on December 30, 2020. The judgment entry addressed the issues of (1) division of property and debts, (2) spousal support, (3) allocation of parental rights and responsibilities, including parenting time, (4) child support, (5) health care, and (6) attorney fees.

{¶ 7} In the judgment entry, the court noted that Arturas had removed all of the furniture located within the marital home except for the furniture in the children's room, when he relocated to Florida. The court found that Jurgita had minimal furniture in her possession and no ability to purchase replacement furniture and furnishings. The court awarded Jurgita the Lake Road property and Arturas the Cove Road property.

{¶ 8} The court found that although Arturas alleged that Jurgita retained certain paintings that he purchased prior to their marriage, the court had previously ordered the parties to make any personal-property claims in writing and provide evidence, such as receipts, that would show premarital ownership of the property, and Arturas had failed to do so. Thus, the court would not disturb the current division of the parties' furnishings, including the art.

{¶ 9} The court named Jurgita the residential parent of the children and ordered Arturas to pay $10,000 toward Jurgita's attorney fees, $500 per month for a period of 48 months in spousal support, carry health insurance for the children, and pay $1,388.08 per month in combined child support ($670.88 per month per child) and cash medical support ($23.17 per month per child).

{¶ 10} It is from this order that Arturas now appeals, raising five assignments of error for our review. Relevant aspects of the trial court's decision will be addressed in the analysis of Arturas's assignments of error. We will review the assignments of error out of order for ease of discussion.

## Assignments of Error

I. Whether the Trial Court erred and abused its discretion by disallowing Defendant's testimony as to the value of one piece of real estate.

II. Whether the Trial Court erred and abused its discretion by using two different methods for valuing real estate and failing to adequately justify such disparate methods.

III. Whether the Trial Court erred and abused its discretion when it failed to determine that the cost of Defendant's health insurance was not reasonable as defined by statute, and by designating Defendant as the health insurance obligor.

IV. Whether the Trial Court erred and abused its discretion when it included $14,000 in Defendant's income for child support when said income was from employment that Defendant no longer holds.

V. Whether the Trial Court erred and abused its discretion when it failed to identify and allocate marital and separate property namely certain original paintings — in violation of ORC 3105.171(B), (C), and (D).

{¶ 11} The Ohio Supreme Court has long recognized that a trial court must have discretion to do what is equitable upon the facts and circumstances of each divorce case. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). Thus, when reviewing a trial court's determination in a domestic relations case, an appellate court generally applies an abuse of discretion standard. *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 130, 541 N.E.2d 597 (1989). "A court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 19.

{¶ 12} As long as the trial court's division of property, calculation of income, and award of spousal support are supported by some competent, credible evidence, this court will not disturb the trial court's decision. *Masitto v. Masitto*, 22 Ohio St.3d 63, 66, 488 N.E.2d 857 (1986). Under this deferential standard, we may not freely substitute our judgment for that of the trial court. *Feldman v. Feldman*, 8th Dist. Cuyahoga No. 92015, 2009-Ohio-4202, ¶ 12, citing *Soulsby v. Soulsby*, 4th Dist. Meigs No. 07CA1, 2008-Ohio-1019.

### Property Division – Assignments of Error I, II, V

{¶ 13} Three of Arturas's assigned errors concern the trial court's distribution of the marital property. This court reviews a trial court's property division "as a whole, in determining whether it has achieved an equitable and fair division of marital assets." *Tyler v. Tyler*, 8th Dist. Cuyahoga No. 93124, 2010-Ohio-1428, ¶ 24, citing *Briganti v. Briganti*, 9 Ohio St.3d 220, 459 N.E.2d 896 (1984).

{¶ 14} R.C. 3105.171(C)(1) mandates an equal division of marital property, or "if an equal division is inequitable, the court must divide the marital property equitably." *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, ¶ 5. In order to determine what is equitable, the trial court must consider the factors outlined in R.C. 3105.171(F). *Id.* These factors include the duration of the marriage, the assets and liabilities of the spouses, tax consequences of the property division, any retirement benefits of the spouses, and "[a]ny other factor the court expressly finds to be relevant and equitable." R.C. 3105.171(F)(1)-(10); *Kehoe v.*

*Kehoe*, 2012-Ohio-3357, 974 N.E.2d 1229, ¶ 14 (8th Dist.). The trial court "'must indicate the basis for its division of the marital property in sufficient detail to enable a reviewing court to determine whether the award is fair, equitable, and in accordance with the law.'" *Johnson v. Mills*, 8th Dist. Cuyahoga No. 102241, 2015-Ohio-4273, ¶ 19, quoting *Franklin v. Franklin*, 10th Dist. Franklin No. 11AP-713, 2012-Ohio-1814, ¶ 4.

### Property Division – Real Estate

{¶ 15} Arturas's first assignment of error pertains to the Cove Avenue property. He argues that the trial court abused its discretion when it did not allow him to testify about the county valuation of the property.

{¶ 16} The decision to admit or exclude evidence lies within the sound discretion of the trial court, and an appellate court will not disturb such a decision absent an abuse of discretion. *Taylor-Stephens v. Rite Aid of Ohio*, 8th Dist. Cuyahoga No. 106324, 2018-Ohio-4714, ¶ 24, citing *State v. Gale*, 8th Dist. Cuyahoga No. 94872, 2011-Ohio-1236, ¶ 12.

{¶ 17} Jurgita testified that she owned the property on Lake Road that was valued at $201,800. Jurgita entered a printout from the Cuyahoga County Auditor and Fiscal Officer's office into evidence that showed that the tax value of the property was $201,800.[1] Arturas questioned why the "tax valuation on the Lake

---

[1]"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). Evid.R. 901(B)(1) provides that the testimony of a witness with knowledge, who testifies that a

Road property was presented" but the tax valuation on the Cove Avenue property "was omitted."  The court explained that Jurgita "presented her case" and when it was his turn to present his case, Arturas could present evidence to establish the value of the Cove Avenue property.

{¶ 18} During his testimony, Arturas inquired why the Cove Avenue property was not valued at $112,000 that he alleged was its county valuation. Counsel for Jurgita objected, arguing that Arturas could not testify as to the value of the property because he did not own the property.  The trial court sustained the objection.

{¶ 19} On appeal, Arturas contends that his testimony was based upon public records hearsay exception found in Evid.R. 803(8).

> Evid.R. 803 provides:
>
> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> * * *
>
> **(8) Public records and reports.**
>
> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or

---

matter is what it is claimed to be, conforms with the requirements of Evid.R. 901. Thus, "'any competent witness who has knowledge that a matter is what its proponent claims may testify to such pertinent facts, thereby establishing, in whole or in part, the foundation for identification.'" *TPI Asset Mgt. v. Conrad-Eiford*, 193 Ohio App.3d 38, 2011-Ohio-1405, 950 N.E.2d 1018, ¶ 13 (2d Dist.), quoting Weissenberger's *Ohio Evidence Treatise*, Section 901.2 (2010).  Arturas did not object to Jurgita introducing the printout from the auditor's office into evidence or her testimony with regard to the printout and does not contest her testimony on appeal.

agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness.

{¶ 20} Arturas did not submit any documents into evidence to support his allegation that the county valued the property at $112,000, let alone any records that comport with Evid.R. 803(8). His testimony that the "county value" on the property is $112,000 does not suffice as a public record or report under Evid.R. 803; his testimony on the matter was hearsay.

### Property Division – Valuation

{¶ 21} In his second assignment of error, Arturas contends that the trial court abused its discretion by using two different methods to value the Cove Avenue and Lake Road properties.

{¶ 22} "R.C. 3105.171 that governs property distribution, expresses no specific way for the trial court to determine valuation." *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, ¶ 32, citing *Crim v. Crim*, 5th Dist. Tuscarawas No. 2007 AP 06 0032, 2008-Ohio-5367. An appellate court's duty is not to require the adoption of any particular method of valuation, but to determine whether, based upon all the relevant facts and circumstances, the court abused its discretion in arriving at a value. *Kapadia* at *id.*, citing *Focke v. Focke*, 83 Ohio App.3d 552, 615 N.E.2d 327 (2d Dist.1992). A trial court must have a rational,

evidentiary basis for assigning value to marital property. *Kapadia* at *id.*, citing *McCoy v. McCoy*, 91 Ohio App.3d 570, 632 N.E.2d 1358 (8th Dist.1993).

{¶ 23} Although Arturas contends that the trial court used "two different methods to value" the properties, the trial court based its decision on the evidence that was introduced at trial. Jurgita presented evidence that the Lake Road property was valued at $201,800. The trial court informed Arturas that he could submit documentation showing what he thought the Cove Avenue property should be valued at, but Arturas failed to present any evidence to support his claim that the property was worth a certain amount. Thus, the trial court, noting that the Cove Avenue rental property was a five-bedroom property in a high demand area that needed work prior to being able to be rented, used the fair-market value to determine the property's value.

{¶ 24} In light of the above, the trial court did not abuse its discretion in valuing the marital properties.

### Property Division – Art

{¶ 25} In the fifth assignment of error, Arturas contends that the trial court erred when it failed to determine that certain artwork Jurgita possessed was his premarital property.

{¶ 26} When distributing property in a divorce proceeding, the trial court must first determine what constitutes marital property and what constitutes separate property. *Comella v. Comella*, 8th Dist. Cuyahoga No. 90969, 2008-Ohio-6673, ¶ 38, citing R.C. 3105.171(B). The determination of whether property

is marital or separate is a mixed question of law and fact that will not be reversed unless it is against the manifest weight of the evidence. *Kobal v. Kobal*, 2018-Ohio-1755, 111 N.E.3d 804, ¶ 27 (8th Dist.). Once the characterization of the property is made, the reviewing court will not disturb the trial court's distribution of the property absent an abuse of discretion. *Id.*; *Williams v. Williams*, 8th Dist. Cuyahoga No. 95346, 2011-Ohio-939, ¶ 8.

{¶ 27} Marital property does not include separate property. R.C. 3105.171(A)(3)(b). "Separate property" includes any real and personal property or any interest in real or personal property that was acquired by a spouse prior to the date of the marriage. R.C. 3105.171(A)(6)(a)(ii).

{¶ 28} Arturas initially argued that there were "7 or 8 paintings that were his separate property purchased prior to marriage." He argued that his trial testimony, his financial disclosure statement that valued the art at $4,000, and Jurgita's admission at trial that she removed artwork from the Aberdeen Road house is proof of his premarital ownership of the paintings.

{¶ 29} During oral argument on this matter, counsel for Arturas stated that the parties had reached an agreement in relation to the contested paintings and he was no longer challenging the trial court's decision as it related to the art. Thus, this issue is now moot.

{¶ 30} In light of the above, the first, second, and fifth assignments of error relating to the division of property are overruled.

**Health Insurance**

{¶ 31} In the third assignment of error, Arturas contends that the trial court erred when it designated him the health insurance obligor for the children.

{¶ 32} Pursuant to R.C. 3119.30, a trial court must determine whether there is health insurance coverage available to either parent. The trial court must also determine whether that coverage is reasonable. The cost is reasonable if it does not exceed five percent of the obligor's annual income. *See* R.C. 3119.29(F) (defining "reasonable cost"). When the cost of the health insurance exceeds a "reasonable cost," a court may still order the obligor to obtain health insurance coverage if (1) the parent requests to obtain or maintain the health insurance coverage that exceeds a reasonable cost, or (2) the court finds that it is in the best interest of the child, and does not impose an undue financial burden. R.C. 3119.302(A)(2). If the court orders the provision of health insurance coverage as being in the child's best interest, and as not imposing an undue financial burden, it must make those findings on the record. R.C. 3119.302(A)(2)(b).

{¶ 33} In this case, the trial court designated Arturas as the health-insurance obligor and ordered him to secure and maintain private health insurance for the children. The court further found that the private-health insurance available to Arturas did not exceed his "Health Insurance Maximum."

{¶ 34} The parties agree, however, that the cost of obtaining health insurance for the children exceeded an amount greater than five percent of Arturas's income. Although counsel for Jurgita conceded the error at oral

argument, Jurgita maintains that the issue is moot because Arturas lost his job six months after the court issued its judgment entry; therefore, Arturas's loss of employment and health insurance will require a modification of Arturas's health insurance obligations.

{¶ 35} Arturas's current employment status is not part of the record before this court. Further, no party has filed a motion in the trial court to modify child support or health-insurance obligations. The issue of whether the court required Arturas to provide health-insurance coverage in an amount that exceeded five percent of his annual income is properly before this court.

{¶ 36} Because the cost of the health insurance exceeded the amount deemed reasonable under the statute, the trial court was required to make certain findings prior to ordering Arturas to obtain coverage. The trial court did not make the findings required by R.C. 3119.302(A)(2)(b) for the imposition of the order. Therefore, the trial court erred by ordering Arturas to provide the coverage.[2]

{¶ 37} The third assignment of error is sustained.

### Income Calculation

{¶ 38} In the fourth assignment of error, Arturas contends that the trial court erred when it included $14,000 of income from 2020 in the child support calculations. According to Arturas, the trial court should not have included the $14,000 because that income was from real estate transactions that occurred in

---

[2]We make no determination as to whether the evidence in this record would support findings required under R.C. 3119.302(A)(2)(c). *See Nguyen v. Vo*, 2016-Ohio-7802, 76 N.E.3d 624, ¶ 27 (2d Dist.).

Ohio and he moved to Florida in January 2020. Moreover, he contends, he is only licensed in the state of Ohio and could not sell real estate in Florida.

{¶ 39} Arturas cites R.C. 3119.01 that provides that gross income for child support purposes does not include "nonrecurring or unsustainable income or cash flow items." "Nonrecurring or unsustainable income or cash flow item" means an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis. R.C. 3119.01(B) (13).

{¶ 40} The trial court found that Arturas was employed as a music director with an annual salary of $52,500 and has an Ohio real-estate license. Arturas testified that his real-estate net proceeds for 2020 were $14,000 and the court made the specific finding that Arturas "earned $14,000 in 2020 from real estate sales." The court further found that because Arturas has a full-time job and a real-estate license, while Jurgita has "minimal skills and a heavy foreign accent complicating her communication ability," that Arturas's earning ability far exceeds Jurgita's earning capacity.

{¶ 41} It is reasonable for the trial court to conclude, since Arturas was able to generate income in Ohio in 2020 even though he moved out of the state in January of that year, that he would be able to continue to generate income with his real-estate license even if he resided out of state. Moreover, at oral argument counsel for Arturas stated that Arturas had moved back to the state of Ohio.

**{¶ 42}** In light of the above, the trial court did not err in including $14,000 of Arturas's 2020 income in the child support calculations.

**{¶ 43}** The fourth assignment of error is overruled.

**{¶ 44}** Arturas's first, second, fourth, and fifth assignments of error having been overruled, and his third assignment of error having been sustained, that part of the trial court's judgment requiring Arturas to provide health insurance for the children is reversed. The judgment is affirmed in all other respects, and the case is remanded for further proceedings consistent with this opinion.

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

ANITA LASTER MAYS, PRESIDING JUDGE

LARRY A. JONES, SR., J.,* and
MARY EILEEN KILBANE, J., CONCUR

*Judge Larry A. Jones, Sr., concurred in this Journal Entry and Opinion prior to his death on October 7, 2021.

(The Ohio Constitution requires the concurrence of at least two judges when rendering a decision of a court of appeals. Therefore, this announcement of decision is in compliance with constitutional requirements.) *See State v. Pembaur*, 69 Ohio St.2d 110, 430 N.E.2d 1331 (1982).