[Cite as *E.A. v. A.A.*, 2025-Ohio-4583.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

E.A.,                                              :

     Plaintiff-Appellee/
     Cross-Appellant,               :
                                   No. 113654

v.                                                 :

A.A.,                                              :

     Defendant-Appellant/
     Cross-Appellee.                :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED
**RELEASED AND JOURNALIZED:** October 2, 2025

---

Civil Appeal from the Cuyahoga County Court of Domestic Relations
Case No. DR-21-384289

---

### *Appearances:*

Stafford Law Co., L.P.A., Joseph G. Stafford, Nicole A. Cruz, and Kelley R. Tauring, *for appellee/cross-appellant*.

Rosenthal │ Lane, L.L.C., Scott S. Rosenthal, James L. Lane, and Alarra S. Jordan, *for appellant/cross-appellee*.

SUTTON, Judge

{¶ 1} Appellant/Cross-Appellee A.A. and Appellee/Cross-Appellant E.A. appeal the judgment of the Cuyahoga County Court of Common Pleas, Domestic

Relations Division. For the reasons that follow, this Court affirms in part and reverses in part.

**Relevant Background Information**

{¶ 2} On February 25, 2021, E.A. filed a complaint for divorce in the Cuyahoga County Court of Common Pleas, Domestic Relations Division. The parties have one minor child.

{¶ 3} After a lengthy trial that occurred on numerous days over the course of more than a year in front of one magistrate and two judges, the trial court granted the parties a divorce on January 19, 2024, and issued a judgment entry dividing the property, ordering spousal and child support, ordering A.A. to pay $150,000.00 of E.A.'s attorney fees, and ordering A.A. to pay the fees of the guardian ad litem ("GAL").

{¶ 4} Both A.A. and E.A. have appealed the decision of the trial court. A.A. raises nine assignments of error and E.A. raises four assignments of error for our review. To facilitate our analysis, we have addressed the assignments of error out of order and have grouped some of the assignments of error together.

## A.A.'s Assignment of Error III
### (Date of Marriage)

The trial court erred and abused its discretion in finding that the date of marriage was June 27, 2014.

{¶ 5} A.A. argues in his third assignment of error the trial court erred and abused its discretion in finding the parties' date of marriage was June 27, 2014 instead of June 27, 2016, for purposes of determining marital and separate property.

E.A. responds the trial court properly exercised its discretion in using June 27, 2014, the date of their religious ceremony, as the date the marriage commenced. Before the trial court can divide property between the parties in a divorce, it must first determine what property is marital and what property is separate. The date of marriage is necessary to this determination.

{¶ 6} R.C. 3105.171(B) provides in relevant part:

In divorce proceedings, the court shall . . . determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property, excluding the social security benefits of a spouse other than as set forth in division (F)(9) of this section, in which one or both spouses have an interest.

{¶ 7} Marital property is property currently owned by either or both spouses that was acquired "during the marriage," which includes real and personal property as well as income and appreciation on separate property due to the labor, monetary or in-kind contribution of either or both spouses that occurred during the marriage. R.C. 3105.171(A)(3). R.C. 3105.171(A)(2)(a) defines "during the marriage" as "the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation[.]" However, if the trial court determines the date of the marriage would be inequitable, it may select a date it considers equitable. R.C. 3105.171(A)(2)(b) provides:

If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in

determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.

{¶ 8} The trial court found the parties entered into a religious marriage on June 27, 2014, and a "subsequent civil ceremony" on June 27, 2016, and further found "that it would be inequitable to use June 27, 2016" when determining the duration of marriage, citing R.C. 3105.171(A)(2)(b). To avoid confusion, this Court will refer to the 2014 date as the parties' "religious marriage" and the 2016 date as the "civil marriage."

{¶ 9} Generally, this Court reviews the trial court's determination pursuant to R.C. 3105.171(A)(2)(b) regarding the period constituting "during the marriage" for an abuse of discretion. *Allan v. Allan*, 2019-Ohio-2111, ¶ 85 (8th Dist.). A trial court abuses its discretion when its decision is "unreasonable, arbitrary[,] or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶ 10} We have stated: "R.C. 3105.171(A)(2)(b) provides the court with jurisdiction to select a date other than the [date of the civil marriage] for purposes of equitably determining what comprises the marital estate for a division of property assessment," *D'Hue v. D'Hue*, 2002-Ohio-5857, ¶ 48 (8th Dist.) "In order to achieve an equitable distribution of property, the trial court must be allowed to use alternative valuation dates where reasonable under the particular facts and

circumstances of the case." *Id.* at ¶ 89, citing *Langer v. Langer*, 123 Ohio App.3d 348 (2d Dist. 1997. "The trial court has broad discretion to determine what is equitable upon the facts and circumstances of each case." *Al-Mubarak v. Chraibi*, 2015-Ohio-1018, ¶ 32 (8th Dist.), citing *Kunkle v. Kunkle*, 51 Ohio St.3d 64 87 (1990).

{¶ 11} The trial court found the following facts when determining that June 27, 2014, was the date of the parties' marriage for purposes of calculating the duration of the marriage and division of marital property. The parties entered into a religious marriage on June 27, 2014; the parties lived together prior to the religious ceremony and continued to live together after the religious ceremony; the parties referred to each other as husband and wife after the religious ceremony, at least in A.A.'s community; E.A. wore a ring after the 2014 religious ceremony; E.A. became pregnant in 2016 and the child was born in November, after the parties June 27, 2016 civil ceremony. A.A. acquired several residential properties prior to the civil marriage but after the religious marriage.

{¶ 12} In addition, E.A. testified she was fully dependent on A.A. from 2014. A.A. testified the parties started living together in 2013 and E.A. was financially dependent on him, stating, "[s]he was dependent on me the first day she met me." The record further reflects that E.A., A.A., and the parties' minor child resided in one of the properties purchased by A.A. prior to the parties' civil marriage. A.A. also wore a ring after the 2014 religious ceremony, but he said it was an engagement ring,

and the parties picked the date of June 27, 2016, for their civil marriage because it was the same date as the religious ceremony two years prior.

{¶ 13} This Court has previously upheld the trial court's determination of a date earlier than the civil marriage under similar facts. In *Allan* at ¶ 91-92, this Court found no abuse of discretion when the trial court determined an earlier date of marriage than the civil date, where the parties had their first child together soon after they moved in together, were financially intertwined, and held themselves out in their community as husband and wife for six years prior to their legal marriage. In *Al-Mubarak*, ¶ 7-11, the parties had a religious wedding celebration in 2001, resided together continuously from 2001 through the time of their civil marriage in 2010, and held themselves out as husband and wife. In that case, the trial court found 2001 to be the date of marriage and this Court found no abuse of discretion. *Id.* at 31-32. In *Bradley v. Bradley*, 2001 WL 755847, *4 (8th Dist. July 5, 2001), we considered the wife's financial dependence on the husband as a factor in determining an earlier date of marriage than the civil marriage for purposes of an equitable division of property.

{¶ 14} Upon review of the record, this Court cannot say the trial court abused its discretion in determining June 27, 2014, to be the date of the parties' marriage for purposes of identifying marital property.

{¶ 15} Accordingly, A.A.'s third assignment of error is overruled.

## A.A.'S ASSIGNMENT OF ERROR I
## (TIME LIMITS FOR TRIAL)

The trial court erred and abused its discretion in failing to order reasonable time limits for trial and failing to apply Evid.R. [611].

{¶ 16} A.A. argues in his first assignment of error the trial court erred in failing to order reasonable time limits for the trial and in allowing E.A.'s counsel to cross-examine A.A. for 12 days of the trial.

{¶ 17} Evid.R. 611(A) governs the mode and order of interrogation of witnesses and presentation of evidence "so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Evid.R. 611(B) provides, "[c]ross-examination shall be permitted on all relevant matters and matters affecting credibility."

{¶ 18} We review a trial court's decision whether or not to impose time limits using an abuse of discretion standard. *See Machen v. Miller*, 2024-Ohio-1270, ¶ 59 (8th Dist.). Similarly, the trial court is vested with broad discretion as to how to control and order the interrogation of witnesses at trial. *State v. McGuire*, 80 Ohio St.3d 390, 400-401 (1997). Therefore, we apply an abuse of discretion standard to a trial court's decisions concerning cross-examination. *See State v. Edwards*, 2006-Ohio-5726, ¶ 17 (8th Dist.), quoting *Calderon v. Sharkey*, 70 Ohio St.2d 218 (1982), syllabus.

{¶ 19} In its judgment entry, the trial court found there were "unique issues and procedural complexities involved" in the case. The trial court also found A.A.

did not give simple answers to questions or "indeed any answers at times." Numerous times in the judgment entry of divorce, the trial court found A.A.'s testimony not credible, contradictory, and evasive concerning his interest in several businesses and concerning his income. Without a lengthy trial and extensive cross-examination, the truth concerning A.A.'s assets and income would likely not have been ascertained. For example, during cross examination on October 24, 2023, more than a year after the trial began, A.A. stated he had $4,000.00 in a safe in his home and "investment" money under a mattress. After a court-ordered search of the safe and A.A.'s bedroom, more than $47,000.00 in cash was found in the safe and an empty box was found under the bed.

{¶ 20} In addition, the record reflects that many of the delays in completing the trial were caused by A.A. and/or his counsel, which caused the trial to go on for more than a year with numerous interruptions. E.A. filed her complaint for divorce on February 25, 2021. The trial commenced in August 2022 and was held on non-consecutive dates throughout September and October 2022. On October 13, 2022, A.A. filed a motion to stay proceedings pending the outcome of a petition for a writ of mandamus and prohibition he had filed against the trial judge in the Supreme Court of Ohio. On December 6, 2022, A.A. dismissed his motion to stay proceedings, and the trial was set to resume on February 6, 2023. The trial did resume on February 6, 2023, but later that day the trial judge learned that one of A.A.'s attorneys had filed an affidavit of disqualification against her, causing the trial to cease. The affidavit of disqualification was dismissed as moot after the trial judge

voluntarily recused herself from the case. Another judge was assigned to hear the case. The trial resumed on October 16, 2023, and concluded on October 31, 2023.

{¶ 21} Upon review of the record in this case, we cannot say the trial court abused its discretion in not limiting the time for trial and allowing extensive cross-examination of A.A.

{¶ 22} Accordingly, A.A.'s first assignment of error is overruled.

## A.A.'S ASSIGNMENT OF ERROR II
## (THIRD-PARTY DEFENDANTS)

> The trial court erred and abused its discretion in exercising jurisdiction over third-party defendants without proper service.

{¶ 23} A.A. argues in his second assignment of error the trial court abused its discretion by adding third-party defendants at the end of trial and "employing negative inferences" against him for the actions of these third parties. The parties spent a great deal of time at trial presenting evidence concerning whether A.A. had ownership interests in several gas stations. The third-party defendants in question are A.S.A. who is A.A.'s sister and title owner of one of the gas station businesses at issue, C.S., a friend of A.A., and R.S., who is C.S.'s brother and title owner of one of the gas station businesses at issue, and Abirad Gas, LLC, the name of the gas station business owned by A.S.A. A.A. further argues the trial court did not have jurisdiction over these third parties because there was not proper service on them pursuant to Civ.R. 4. This Court initially observes that A.A.'s counsel does not purport to represent these third parties, yet is making arguments on behalf of them, including "due process" arguments. And A.A. asserts, without citing to any authority, that "the

trial court must afford these individuals and entities due process before it can make any negative inferences."

{¶ 24} E.A. responds to this assignment of error arguing that the trial court did not include any orders or judgments against these third parties in its judgment entry of divorce and dissolved the prior temporary restraining orders against the third parties in its judgment entry. Moreover, E.A. argues there was no prejudice *to A.A.* caused by the trial court's granting of E.A.'s motion to add the third parties as defendants. Upon review of the record and the judgment entry of divorce, this Court agrees. The trial court specifically found E.A.'s testimony concerning A.A,'s business interests credible, and A.A.'s testimony not credible. In finding A.A. had some ownership interest in the subject gas stations, the trial court specifically referenced E.A.'s testimony concerning A.A.'s involvement in the businesses and the testimony of an attorney who performed legal work for one of the business entities, Bedford Gas, concerning payments by A.A for legal services performed for Bedford Gas.

{¶ 25} The record reflects that "negative inferences" were discussed at trial concerning, A.A.'s sister, a witness subpoenaed by E.A., who failed to appear. A court may make a negative inference when a party who has control over certain evidence fails, without a satisfactory explanation, to produce that evidence. *J.S. v. A.S.*, 2024-Ohio-6015, ¶ 47 (8th Dist.), citing *Roetenberger v. Christ Hosp. & Anesthesia Assocs. of Cincinnati*, 2005-Ohio-5205, ¶ 21 (1st Dist.). However, the trial court's judgment entry of divorce does not indicate that "negative inferences"

concerning the absent witness were made by the trial court in reaching its decision, but even if the trial court did make a negative inference because A.A.'s sister failed to appear, we cannot say such inference was improper. Even assuming the trial court erred in granting E.A.'s motion to add third-party defendants, such error was harmless as A.A. suffered no prejudice as a result. *See State v. Cawthorne,* 2024-Ohio-2258, ¶ 18 (8th Dist.).

{¶ 26} Because A.A. cannot demonstrate any harm or prejudice to him resulting from the trial court's granting of E.A.'s motion to amend the complaint to add third-party defendants, A.A.'s second assignment of error is overruled.

### A.A.'S ASSIGNMENT OF ERROR IV
### (IMPUTING INCOMES)

> The trial court erred and abused its discretion in the determination of the parties' incomes.

{¶ 27} A.A. argues in his fourth assignment of error the trial court erred by imputing an income to E.A. of only $18,000.00 and in determining his income to be $204,174.00. A.A. argues his income should be $100,000.00 for support purposes and A.A.'s should be $80,000.00.

{¶ 28} As long as the trial court's calculation of income is supported by some competent, credible evidence, this court will not disturb the trial court's decision. *Kerkay v. Kerkay,* 2024-Ohio-3185, ¶ 51 (8th Dist.). *See also Bandza v. Bandza,* 2021-Ohio-4011, ¶ 12 (8th Dist.), citing *Masitto v. Masitto,* 22 Ohio St.3d 63, 66 (1986).

{¶ 29} R.C. 3108.18(C)(1) sets forth factors the trial court must consider in determining spousal support and provides in part:

> In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
> (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
> (b) The relative earning abilities of the parties[.]

Therefore, the trial court must first determine the income of both parties. Because R.C. 3105.18(C) permits inquiry into a party's earning potential, Ohio courts often impute income to parties who are voluntarily underemployed or otherwise not working up to their full earning potential and have determined that earning ability involves "both the amount of money one is capable of earning by his or her qualifications, as well as her ability to obtain such employment." *Rothman v. Burns*, 2007-Ohio-3914, ¶ 30-31 (8th Dist.), quoting *Haninger v. Haninger*, 8 Ohio App.3d 286, 288 (10th Dist. 1982).

{¶ 30} Here, the trial court found E.A. has never earned more than $12,000.00 per year and although she has a master's degree in social work, she had not yet obtained her social work license. While E.A. testified she hoped she could earn $80,000.00 per year after she passes her licensing test, the trial court reasonably concluded this was not a realistic figure. Based on the record, we cannot say the trial court erred in imputing an income of $18,000.00 to E.A. for spousal support purposes. While A.A. argues the trial court improperly considered evidence

outside the record or conducted its own investigation into the facts of E.A.'s potential earning ability, the judgment entry of divorce references no outside facts or investigation by the trial court. The trial court found E.A. earned only $6,600.00 in 2020, $8,981.00 in 2021, and $11,847.00 in 2022. A.A. argues the trial court erred in not accepting E.A.'s own testimony concerning her earning potential. However, "[w]e are mindful that the [trier of fact] is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Gannon*, 2020-Ohio-3075, ¶ 20 (9th Dist.). Given E.A.'s recent work and earning history, the trial court did not determine E.A.'s hope that she could earn $80.000.00 per year or more if she obtains her social work license to be credible. Because the figure of $18,000.00 is based on some competent, credible evidence in the form of what E.A. actually earned in the years preceding the divorce, we will not disturb the trial court's finding concerning the income imputed to E.A.

{¶ 31} As for A.A.'s income, the trial court found A.A.'s tax returns showing an average income of $72,000.00 to $76,000.00 were not reliable and did not accurately reflect his annual income. The trial court found the parties' lifestyles and the expenses A.A. pays indicate a much higher income, stating "[t]he [c]ourt must conclude that [A.A.'s] reported income to this [c]ourt and on his federal tax returns cannot be the amount he earns based on the funds that he expends." The trial court listed some of A.A.'s expenditures, including mortgage and line of credit payments, real estate taxes, international travel, and designer purses. The trial court found A.A. has paid large fees to his attorneys in cash and large sums of cash were found

in A.A.'s home. The trial court found that A.A. had completed a loan application and had put down that his income was $204,174.00, a figure that was more in line with his expenses.

{¶ 32} When A.A. was cross-examined about his income and expenses, his answers were evasive, and he answered repeatedly, "I don't recall" and "I don't remember."

{¶ 33} We have reviewed the judgment entry of divorce and the record in this matter. The trial court's determination of the parties' income, $18,000.00 for E.A. and $204,174.00 for A.A., is based on some competent, credible evidence and this Court will not disturb that determination.

{¶ 34} Accordingly, A.A.'s fourth assignment of error is overruled.

## E.A.'S ASSIGNMENT OF ERROR I
## (THE GAS STATIONS)

The trial court erred as a matter of law and abused its discretion in failing to award an equitable division of property and distributive award to [E.A.]

{¶ 35} In her first assignment of error, E.A. argues the trial court determined A.A. had ownership interests in two entities, Abirad, LLC and Shaker Gas, Inc., but did not divide the interests between the parties. Therefore, E.A. argues, in order to accomplish an equitable division of the property, the business entities should be sold and the proceeds equitably divided.

{¶ 36} Before the trial court can divide property between the parties in a divorce, it must first determine what property is marital and what property is separate. R.C. 3105.171(B) provides in relevant part:

> In divorce proceedings, the court shall . . . determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property, excluding the social security benefits of a spouse other than as set forth in division (F)(9) of this section, in which one or both spouses have an interest.

{¶ 37} In its Judgment Entry of Divorce, the trial court addressed the gas stations multiple times: In the "Division of Property" section of the judgment entry of divorce, the trial court stated, "[t]he [c]ourt finds that [A.A.] has at least some ownership interest in both of these entities and likely complete ownership of the Shaker Square gas station. . . . However, since [A.A.] is not the *title* owner of these properties, it is not fatal to the division of property." (Emphasis added.) The trial court then stated, "[t]he gas stations provide a stream of income. Although the only way to divide the properties might be to sell them, that would not necessarily yield the greatest return." The trial court then found a distributive award was required so E.A. would receive some value for "the business asset or assets [A.A.] has hidden from" the trial court.

{¶ 38} In the section of its judgment entry concerning spousal support, the trial court stated, "[t]he parties marital assets will be divided equitably, but [A.A.]

will have more assets due to the premarital nature of some of the assets and the *equitable rather than legal ownership of one or two business*." (Emphasis added.)

{¶ 39} In the "Attorney Fee" section of the judgment entry of divorce, the trial court stated, "[A.A.] appears to own at least one business and has failed to disclose that ownership."

{¶ 40} It is clear the trial court took A.A.'s business interests into consideration when dividing the property and awarding attorneys' fees. However, nowhere in its judgment entry of divorce does the trial court specifically find whether A.A.'s interests in the businesses were separate or marital property and the trial court did not award those interests to either party as required by R.C. 3105.171(B).

{¶ 41} Accordingly, E.A.'s first assignment of error is sustained in part and the case is remanded to the trial court to determine in the first instance whether A.A.'s ownership interests in the businesses are marital property or separate property, and then to award those interests to either E.A. or A.A.

{¶ 42} The part of E.A.'s first assignment of error concerning whether the businesses should be equitably divided as part of a distributive award is premature. *See* App. R. 12(A)(1)(c), *In re A.C.,* 2019-Ohio-5127, ¶ 29 (8th Dist.), *State v. Funderburk,* 2008-Ohio-3449, ¶ 25 (8th Dist.), and *Brisbane v. Swagelok,* 2025-Ohio-1450, ¶ 28 (8th Dist.) ("As this case is being returned to the trial court, the issue may be addressed on remand[.] . . . A ruling by this court at this time would be premature. Accordingly the . . . assignment of error is overruled.").

## A.A.'S ASSIGNMENT OF ERROR V
## (SPOUSAL SUPPORT)

The trial court erred and abused its discretion in ordering spousal support in the amount of $3,000.00 per month for forty-eight (48) months.

## A.A.'S ASSIGNMENT OF ERROR VIII
## (GUARDIAN AD LITEM FEES)

The trial court erred and abused its discretion in ordering [A.A.} to pay all of the guardian ad litem's fees.

## E.A.'S ASSIGNMENT OF ERROR II
## (SPOUSAL SUPPORT)

The trial court erred as a matter of law and abused its discretion in failing to issue a reasonable award of spousal support to [E.A.]

{¶ 43} A.A.'s fifth and eighth assignments of error and E.A.'s second assignment of error all concern spousal support. A.A. argues that the trial court erred and abused its discretion in ordering spousal support to E.A. in the amount of $3,000.00 per month for 48 months, arguing that such award is too high. E.A. argues in her second assignment of error that the trial court erred and abused its discretion by not awarding her reasonable spousal support, arguing the award is too low. In his eighth assignment of error, A.A. argues the trial court erred and abused its discretion in ordering A.A. to pay all of the fees for the GAL, which the trial court ordered as additional spousal support to E.A.

{¶ 44} However, our resolution of E.A.'s first assignment of error renders A.A.'s fifth and eighth assignments of error and E.A.'s second assignment of error premature. R.C. 3105.18 governs the award of spousal support in divorce proceedings and the "relative assets of the parties" are to be considered by the trial

court when determining an "appropriate and reasonable" spousal support award. R.C. 3105.18(C)(1)(i).

{¶ 45} Because all of the assets of the parties have not yet been classified as marital or separate property and divided, the assignments of error concerning spousal support are premature.

## A.A.'S ASSIGNMENT OF ERROR VI
### (DIVISION OF PROPERTY)

The trial court erred and abused its discretion in its division of property.

{¶ 46} A.A. argues in his sixth assignment of error that the trial court erred and abused its discretion in its division of property. However, our resolution of E.A.'s first assignment of error renders A.A.'s sixth assignment of error premature.

{¶ 47} In his ninth assignment of error, A.A. argues the trial court erred and abused its discretion when it found A.A. committed financial misconduct and issued a distributive award.

{¶ 48} R.C. 3105.171(E)(4) provides, "if a spouse has engaged in financial misconduct, including but not limited to the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." At this time, we will address only the merits of the "financial misconduct" portion of this assignment of error because our disposition of E.A.'s first assignment of error renders the remainder of the assignment of error concerning the division of property and distributive award premature.

{¶ 49} When reviewing whether a trial court erred in its finding regarding financial misconduct, this Court applies a manifest weight of the evidence standard. *Palazzo v. Palazzo*, 2016-Ohio-3041, ¶ 11 (9th Dist.). *See also Hunter v. Troutman*, 2025-Ohio-366, ¶ 81 (8th Dist.) ("All the above-described evidence, when looked at collectively, supports the trial court's conclusion that [wife] committed financial misconduct.") "When conducting a manifest weight review, this court 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" (Alterations in original.) *Lichtenstein v. Lichtenstein*, 2020-Ohio-5080, ¶ 24 (8th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further, "[i]t is well settled that when testimony is in dispute, we defer to the trier of fact's credibility determination." *Calanni v. Kolodny*, 2018-Ohio-1289, ¶ 15, citing *Fanous v. Ochs*, 2013-Ohio-1034, ¶ 18 (8th Dist.). The trier of fact "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984). Consequently, the reviewing court is "guided by a presumption that the findings of the trier-of-fact were indeed correct." *Seasons Coal Co.*, at 80.

{¶ 50} "Financial misconduct" exists if a spouse engages in "wrongdoing" or "profit[s] from the misconduct or intentionally defeat[s] the other spouse's distribution of marital assets." *Bostick v. Bostick,* 2008-Ohio-5119, ¶ 23 (8th Dist.). The complaining

spouse has the burden of establishing financial misconduct. *Cross v. Cross*, 2015-Ohio-5255, ¶ 15 (8th Dist.).

{¶ 51} The evidence of financial misconduct included the following. A.A. was the owner of all or part of several gas station businesses he claimed were owned by others. A.A. testified he was an employee of his sister's gas station, but he acted like an owner, not an employee. A.A. handled all the finances for the business. A.A. made a payment of $100,000.00 for one of the gas stations. In addition, he paid an attorney for legal work for one of the gas stations. A.A. signed as a personal guarantor for payment on behalf of one of the gas stations.

{¶ 52} In addition to the gas station businesses, A.A. also owned numerous homes, some of which were rentals. The properties that were marital properties were encumbered by mortgages but the properties purchased by A.A. prior to the marriage were not.

{¶ 53} Other evidence of financial misconduct included that A.A. was evasive concerning rental income, he and his niece had a code they would use in text messages when they were putting cash in a safe deposit box, which they called the "chicken coop." A.A. testified he had $4,000.00 in a safe in his home, and money from investments under his mattress, but there was actually more than $47,000.00 in the safe and an empty box under A.A.'s bed.

{¶ 54} A.A.'s spending habits and lifestyle evidenced he had more money and property than he disclosed. When asked where the money came from to support his lifestyle, A.A. claimed he borrowed the money from friends and family, but he

could not remember who loaned him the money or how much and he did not list these debts on his financial disclosure forms. A.A. often paid his attorneys in cash.

{¶ 55} This Court has reviewed the record in this matter. The trial court's determination that A.A. committed financial misconduct is supported by the record and is not against the manifest weight of the evidence.

{¶ 56} Therefore, A.A.'s ninth assignment of error is overruled on the merits of the "financial misconduct" portion of the assignment of error. However, our resolution of E.A.'s first assignment of error renders the portion of A.A.'s ninth assignment of error concerning the division of property and distributive award premature.

### A.A.'S ASSIGNMENT OF ERROR VII
### (ATTORNEYS' FEES)

The trial court erred and abused its discretion in ordering [A.A.] to pay [E.A.'s] attorney fees

### E.A.'S ASSIGNMENT OF ERROR IV
### (ATTORNEYS' FEES)

The trial court erred as a matter of law and abused its discretion in failing to award [E.A.] her attorney fees and litigation expenses.

{¶ 57} A.A.'s seventh assignment of error and E.A.'s fourth assignment of error both concern the trial court's award of attorney fees and litigation expenses to E.A. The trial court ordered A.A. to pay $150,000.00 of E.A.'s attorney fees, out of the $299,607.87 in attorneys' fees and expenses she incurred. A.A. argues the award of attorneys' fees to E.A. should be vacated. E.A. argues the award of $150,000.00

in attorney fees is not enough in light of A.A.'s deception, financial misconduct, and delay tactics that caused an increase in E.A.'s attorneys' fees and expenses.

{¶ 58} R.C. 3105.73 governs the award of attorney's fees and expenses in divorce cases and provides in part:

> (A) In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

{¶ 59} This court has stated, "[t]here are no 'automatic attorney fees' in domestic relations cases, and when determining whether to award attorney fees in divorce cases, 'the court must start with a presumption that attorney fees are the responsibility of the party who retains the attorney.'" (Cleaned up.) *A.A.O. v. A.M.O.,* 2022-Ohio-2767, ¶ 58 (8th Dist.), quoting *Victor v. Kaplan,* 2020-Ohio-3116, ¶ 127 (8th Dist.). "It is well-established that an award of attorney fees is within the sound discretion of the trial court." *Rand v. Rand,* 18 Ohio St.3d 356, 359 (1985); *see also A.A.O.* at ¶ 58, citing *Saks v. Riga,* 2014-Ohio-4930, ¶ 89 (8th Dist.). An "award [of attorney's fees] will not be overruled absent an attitude that is unreasonable, arbitrary, or unconscionable." *Cyr v. Cyr,* 2005-Ohio-504, ¶ 70 (8th Dist.). Therefore, this Court will not reverse a trial court's award of attorney's fees absent an abuse of discretion. *Wilson v. Wilson,* 2023-Ohio-1752, ¶ 23 (8th Dist.). "Under this highly deferential standard of review, we 'may not freely substitute [our] judgment for that of the trial court.'" *Allan,* 2019-Ohio-at ¶ 95, quoting *Dannaher*

*v. Newbold,* 2007-Ohio-2936, ¶ 33 (10th Dist.). "A court may award reasonable attorney fees if it determines that the award is equitable. *Allan* at ¶ 100.

{¶ 60} The trial court stated in its judgment entry of divorce:

There were unique issues and procedural complexities involved in this case. [A.A.] appears to own at least one business and has failed to disclose that ownership. Furthermore, [A.A.] as stated above, did not give simple answers to the questions or indeed any answers at times.

{¶ 61} The trial court then found that the amount of E.A.'s attorney's fees was reasonable, and stated, "[c]onsideration was given as to whether the legal services rendered were necessary and whether under the facts of this case the amount of time expended was fully compensable and the income and assets of the parties[,]" and reasoned, "[a]fter the division of the marital property and the determination of spousal support, [E.A.] will not have the financial ability to pay all her own attorney fees and [A.A.] will have the ability to contribute to the requesting party's fees." As an additional reason in support of the order requiring A.A. to pay $150,000.00 of E.A.'s attorneys' fees, there was testimony that A.A. paid large sums for legal work, not just for the divorce-related legal work, but for the businesses as well. The trial court found it equitable that A.A. pay at least as much as he has paid in cash for his attorneys, then ordered A.A. to pay $150,000.00 towards E.A.'s attorneys' fees and expenses.

{¶ 62} We have reviewed the record in this matter and cannot say the trial court abused its discretion in ordering A.A. to pay $150,000.00 of E.A.'s attorney's fees and expenses. *See Bertalan v. Bertalan*, 2025-Ohio-1443, ¶ 86 (8th Dist.). ("In

light of Husband's well-documented behavior during the course of the underlying proceedings, we find no abuse of discretion in the fee award."). Here, the record is replete with examples of A.A.'s evasiveness concerning his business interests, assets, and income and this Court has already upheld the trial court's determination that A.A. committed financial misconduct.

{¶ 63} E.A. argues in her fourth assignment of error that A.A. should be required to pay more of E.A.'s attorneys' fees. However, we have reviewed the record and cannot conclude the trial court abused its discretion in not requiring A.A. to pay more than $150,000.00 of E.A.'s attorneys' fees.

{¶ 64} A.A.'s seventh and E.A.'s fourth assignments of error are overruled.

### E.A.'S ASSIGNMENT OF ERROR III
### (CHILD SUPPORT)

> The trial court erred as a matter of law and abused its discretion in applying a downward deviation to [A.A.'s] child support obligations.

{¶ 65} E.A. argues in her third assignment of error that the trial court erred and abused its discretion in applying a downward deviation to A.A.'s child support obligation. Specifically, she argues the trial court failed to include the mandatory findings pursuant to R.C. 3119.22 to support a downward deviation of A.A.'s child support obligation.

{¶ 66} However, our resolution of E.A.'s first assignment of error renders her third assignment of error premature. The trial court included $36,000.00 in spousal support as "other" income for E.A. in calculating child support. Because the

assignments of error concerning the division of property and spousal support are premature, the assignment of error concerning child support is also premature.

{¶ 67} For the forgoing reasons, the judgment of the Cuyahoga County Court of Common Pleas Domestic Relations Division is affirmed in part and reversed in part and remanded for further proceedings consistent with this decision.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Cuyahoga, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
BETTY SUTTON
FOR THE COURT

CARR, J.
STEVENSON, J.
CONCUR.

(Carr, J., Stevenson, J., and Sutton, J., of the Ninth District Court of Appeals, sitting by assignment.)