[Cite as *J.S. v. A.S.*, 2026-Ohio-459.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| J.S., | : | |
| Plaintiff-Appellant, | : | No. 115184 |
| v. | : | |
| A.S., | : | |
| Defendant-Appellee. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** February 12, 2026

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-19-375930

### *Appearances:*

Rosenthal | Lane, L.L.C., Scott S. Rosenthal, and James L. Lane, *for appellant*.

Stafford Cruz Law Company and Kelley R. Tauring, *for appellee*.

DEENA R. CALABRESE, J.:

{¶ 1} Plaintiff-appellant J.S. ("Wife") appeals the trial court's orders after a remand from this court in *J.S. v. A.S.*, 2024-Ohio-6015 (8th Dist.) ("*J.S. I*"). Wife appeals the trial court's orders that Wife pay $66,000 for attorney fees and expenses

to defendant-appellee A.S. ("Husband") and that each party pay half of the outstanding guardian ad litem ("GAL") fees. For the reasons stated below, we reverse and remand with instructions to the trial court to follow the mandate of the *J.S. I* Court. [1]

**Relevant Facts and Procedural History**

{¶ 2} Wife and Husband were married on August 31, 2003, and three children were born as issue of the marriage. Wife filed a complaint for divorce on March 18, 2019. A trial that involved multiple days of testimony was held in 2023. More detailed facts regarding the case can be found in *J.S. I*.

{¶ 3} Relevant here is the trial evidence and testimony regarding Wife's income, Husband's request for attorney fees, and the allocation of GAL fees. Wife testified that she has not been employed since the birth of their first child in 2005. During the course of the marriage, Wife's father, B.T., would often provide varying amounts of financial support for the family. In the year leading up to the trial, B.T. provided financial support to Wife by paying $125,000 towards her attorney fees, paying $18,000 of Wife's and a minor daughter's vehicle leases, paying Wife's reported expenses of $14,736.08 per month, and paying for expenses towards the marital home. Wife repeatedly testified that she always had to ask for money and that her requests for financial support were often rejected.

---

[1] This appeal is a companion to Husband's appeal, *J.S. v. A.S.*, 8th Dist. Cuyahoga No. 115183. We only address Wife's appeal herein.

{¶ 4} On June 21, 2023, the GAL testified regarding her fees associated with this case. The GAL testified that she billed each party half of her fees. Wife made some payments towards her half and, as a result, as of June 15, 2023, her balance was $7,661. Husband posted a bond but did not make any further payments and as of June 15, 2023, his balance was $14,433.75. (June 21, 2023 tr. 16.)

{¶ 5} On June 30, 2023, the trial court issued its judgment entry of divorce. The trial court's order, in summary, is as follows:

- Husband to pay $36,500 to Wife for her interest in the real property;

- The parties to split Wife's Nordstrom 401(k) account equally;

- Wife to pay spousal support to Husband in the sum of $4,600 per month, plus 2% processing charge, for a term of seventy- two (72) months, commencing June 1, 2023;

- The parties to share parental rights of their children pursuant to Wife's proposed shared parenting plan;

- Husband could claim the children for income tax purposes;

- The parties split the ordinary medical expenses for the children;

- Husband to maintain the children's health insurance;

- Wife pay child support to Husband in the sum of $3,476.64 per month, plus 2% processing charge;

- Wife post a cash bond in the amount of $10,000;

- *The GAL fees were allocated 75% to Wife and 25% to Husband; and*

- *Wife pay Husband the sum of $100,000 for his attorney fees.*

{¶ 6} The trial court made more specific findings relevant to this appeal. In the original divorce decree, the trial court imputed Wife's income as $359,000 based

on the financial support her father, B.T., had provided to her in the previous year. Husband's annual salary at the time was $94,500. Regarding Husband's request for attorney fees, the trial court ordered Wife to pay Husband's attorney fees in the amount of $100,000 because of her "ability to pay, the extended litigation, and failure to turn over financial documents related to her income and assets." And lastly, regarding the GAL fees, the trial court found that there were outstanding GAL fees of $25,290 as of June 28, 2023, and allocated 75 percent to Wife and 25 percent to Husband. The trial court did not make any further findings explaining the allocation of GAL fees.

{¶ 7} Both parties subsequently filed appeals. On December 26, 2024, this court affirmed in part, reversed in part, and remanded in part the trial court's judgment entry of divorce in *J.S. I*. The *J.S. I* Court rejected the trial court's determination that the financial support that B.T. provided to Wife be used in the calculation of her imputed income. The *J.S. I* Court found that "there was no evidence that Wife had any source of income of her own name," and the effective outcome of the trial court's decision was that "B.T. would be responsible for paying spousal support to Husband." *J.S. I* at ¶ 66. This outcome "improperly shifted the responsibility of support to a nonparty who had no legal obligation to support either party." *Id*. at ¶ 70.

{¶ 8} The *J.S. I* Court also reversed the trial court's order that Wife pay $100,000 of Husband's attorney fees, stating:

The trial court based its award of attorney's fees on Wife's "ability to pay, the extended litigation, and failure to turn over financial documents related to her income and assets." As a result of our decision reversing the trial court's determination of Wife's income and also the division of marital assets, we must reverse the trial court's order of attorney's fees. On remand, the trial court must reconsider whether attorney's fees are appropriate and equitable given our findings here.

*J.S. I* at ¶ 77.

{¶ 9} Lastly, the *J.S. I* Court found the following regarding the allocation of

GAL fees:

The court also found that the GAL's fees should be divided with Wife paying 75 percent and Husband paying 25 percent. The trial court failed to state the basis for this division and given our findings with respect to Wife's income, we sustain Wife's fourth and fifth assignments of error to allow the court to fashion an equitable remedy.

*J.S. I* at ¶ 78.

{¶ 10} At the conclusion of the opinion, this court summarized its findings as

follows:

The trial court's judgment is reversed in part and the case is remanded to (1) adjust the award of equity of the marital home to reflect Husband's 25 percent separate interest, and equitably divide the 75 percent marital interest in the home (2) recalculate spousal and child support to make the awards equitable and just; (3) *vacate the award of attorney fees to Husband*; (4) vacate the order splitting an unproven Nordstrom 401K between the parties; (5) *adjust the order splitting the GAL's fees to make the awards equitable and just*; and (6) vacate the order for Wife to pay a $10,000 bond for support.

(Emphasis added.) *J.S. I* at ¶ 95.

{¶ 11} On remand, the trial court issued an amended divorce decree on

May 29, 2025. The amended divorce decree set Wife's imputed income as minimum

wage, or $22,256 annually. The trial court awarded Wife $54,750 for her interest in

the marital home and half of each of the retirement accounts. In addition, the trial court ordered that Wife pay Husband's attorney fees in the amount of $66,000, citing Wife's "actions in the extended litigation and [Wife's] failure to turn over financial documents." Lastly, the trial court ordered that Wife and Husband were each allocated 50 percent of the outstanding GAL fees of $25,290. The order further states that "[t]his total considers all payments made to date by [Wife] towards Guardian ad Litem fees and any bonds posted with" and "[t]his total considers all payments made to date by [Husband] towards Guardian ad Litem fees and any bonds posted with."

{¶ 12} Wife raises the following assignments of error for our review:

1. The trial court erred and abused its discretion in ordering Appellant to pay Appellee's attorney fees in the amount of $66,000.00.

2. The trial court erred and abused its discretion in ordering Appellant to pay the majority of the Guardian Ad Litem's fees.

## I. Law and Analysis

### A. Attorney Fees

{¶ 13} In her first assignment of error, Wife asserts that the trial court erred and abused its discretion when it ordered her to pay $66,000 out of $388,245.34 of Husband's attorney fees and expenses.

{¶ 14} R.C. 3105.73(A) governs the award of attorney fees in divorce cases and provides in part:

> In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is

equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

{¶ 15} We review an award of attorney fees under an abuse-of-discretion standard. *E.A. v. A.A.*, 2025-Ohio-4583, ¶ 59 (8th Dist.). This court has held that "[t]here are no 'automatic attorney fees' in domestic relations cases, and when determining whether to award attorney fees in divorce cases, 'the court must start with a presumption that attorney fees are the responsibility of the party who retains the attorney.'" (Cleaned up.) *A.A.O. v. A.M.O.*, 2022-Ohio-2767, ¶ 58 (8th Dist.), quoting *Victor v. Kaplan*, 2020-Ohio-3116, ¶ 127 (8th Dist.).

{¶ 16} "In determining whether an award of fees is equitable, the court may consider 'the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.'" *Saks v. Riga*, 2014-Ohio-4930, ¶ 89 (8th Dist.), quoting R.C. 3105.73(A). "It is well-established that an award of attorney fees is within the sound discretion of the trial court." *Rand v. Rand*, 18 Ohio St.3d 356, 359 (1985); *see also A.A.O.* at ¶ 58, citing *Saks* at ¶ 89 (8th Dist.).

{¶ 17} As discussed above, the trial court originally ordered Wife to pay $100,000 of Husband's attorney fees because of her "ability to pay, the extended litigation, and failure to turn over financial documents related to her income and assets." In *J.S. I*, this court reversed and remanded the award of attorney fees because of the reversal of the income and marital property determinations. In the amended divorce decree, the trial court ordered that Wife pay Husband $66,000 for

attorney fees. A careful reading of the amended divorce decree reveals that the trial court was still considering the financial support B.T. provides to Wife in its determination. The order states, in relevant part, as follows:

> **SPOUSAL SUPPORT**
>
> One of the most significant issues in this matter was Plaintiff's income. The evidence clearly shows that the *Plaintiff has made substantial financial contributions to the family for the entirety of the marriage despite not being employed or earning an income.* There have also been many issues related to the discovery process on these issues that extended well into trial.
>
> The Court finds, that upon considering all the factors set forth in Ohio Revised Code 3105.18(C)(1) and in particular those specified below, that spousal support is neither appropriate nor reasonable. The Court finds that the following factors support this award: the standard of living of the parties established during the marriage; the income and earning potential of the parties; *all other relevant factors including other financial resources*, and the relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties.
>
> . . .
>
> The Court finds that it is appropriate to award some attorney fees in this matter due to the Plaintiff's actions in the extended litigation and Plaintiffs failure to turn over financial documents.

(Emphasis added.) (May 29, 2025 journal entry.)

{¶ 18} After a thorough review, we find that nothing in the record supports the trial court's award of $66,000 to Husband for attorney fees. First, it does not appear that Wife's actions alone extended the litigation. Both parties filed relatively equal amounts of motions for continuances and motions to compel. Husband filed a motion for attorney fees on May 1, 2020, requesting $25,000 for interim attorney fees. The trial court denied the motion for attorney fees and stated that requests for

attorney fees related to specific motions and a request at the conclusion of the case would be entertained. On January 12, 2023, the magistrate awarded Husband's request for attorney fees related to Husband's May 1, 2020 motion to compel, even though the motion was moot by that time. However, Husband's attorney fee bill filed on January 27, 2023, reveals that he incurred, at most, $1,150 for attorney fees and expenses related to the filing of that motion to compel. It is unclear from the record if the trial court adopted the magistrate's decision, and it is unclear why an additional $66,000 was awarded to Husband for attorney fees and expenses.

{¶ 19} It is also unclear why the trial court awarded attorney fees for Wife's "failure to turn over financial documents." We note that the original divorce decree stated that attorney fees were awarded to Husband because of Wife's "failure to turn over financial documents related to her income and assets." The amended divorce decree simply states that Husband is awarded attorney fees because of Wife's "failure to turn over financial documents." The trial court does not state what financial documents Wife failed to turn over. A thorough review of the record reveals that Husband repeatedly asserted that Wife did not turn over financial documents related to the liquidation of accounts that Wife used to pay her attorney fees. Wife ultimately prevailed on that issue because the trial court determined that the accounts were her separate property. Husband also asserts that Wife should pay his attorney fees in part because B.T., a nonparty, failed to turn over financial documents. However, Husband has not provided any legal authority to support this assertion.

{¶ 20} Husband contends that the trial court's award of attorney fees is in accordance with this court's remand and the law-of-the-case doctrine. However, the *J.S. I* Court indicated that it was premature to address attorney fees or GAL fees given the reversal and remand of other orders. *J.S. I* at ¶ 77, citing *Ott v. Ott*, 2022-Ohio-2087, ¶ 28 (9th Dist.). If anything, *J.S. I* and *Saks* do not support an award of attorney fees in this case. The *J.S. I* Court directed the trial court to vacate the award of attorney fees to Husband, the splitting of an unproven Nordstrom 401(K), and the posting of a $10,000 bond by Wife. *J.S. I* at ¶ 95. In contrast, the *J.S. I* Court directed the trial court to "adjust" or "recalculate" its finding on the division of the equity in the marital home, spousal and child support, and the allocation of GAL fees. This court has previously found that

> [u]nder the "mandate rule," a lower court must "carry the mandate of the upper court into execution and not consider the questions which the mandate laid at rest." *Sprague v. Ticonic Natl. Bank* (1939), 307 U.S. 161, 168, 59 S.Ct. 777, 83 L.Ed. 1184; *see, also, State ex rel. Cordray v. Marshall*, 123 Ohio St.3d 229, 2009-Ohio-4986, 915 N.E.2d 633, at ¶ 32 ("We have expressly held that the Ohio Constitution does not grant to a court of common pleas jurisdiction to review a prior mandate of a court of appeals."). The lower court may, however, rule on issues left open by the mandate. *Id. But when the mandate leaves nothing left to decide, the lower court is bound to execute it. Id.*

(Emphasis added.) *State v. Carlisle*, 2010-Ohio-3407, ¶ 16 (8th Dist.). A strict interpretation of *J.S. I* would have us find that the trial court followed the mandates of this court with regards to all orders except the vacation of the attorney fees, opting to adjust the attorney fees rather than vacate the award.

{¶ 21} As stated above, it appears from the amended divorce decree that the trial court was still considering the financial support that B.T. provides to Wife when

making its determinations. The *J.S. I* Court found "there was no evidence that [Wife] had any source of income in her own name." *J.S. I* at ¶ 66. Given Wife's imputed income, the marital assets she was awarded, and the history of this case, the likely outcome in this case is that B.T. would cover the $66,000 for attorney fees and expenses awarded to Husband. As we noted in *J.S. I*, this inappropriately shifts the burden of payment to a nonparty.

{¶ 22} For the reasons stated above, we find that the trial court erred and abused its discretion when it ordered that Wife pay Husband $66,000 for attorney fees and expenses. Wife's first assignment of error is sustained. As the *J.S. I* Court mandated, "[o]n remand, the trial court must reconsider whether attorney's fees are appropriate and equitable given our findings here." *J.S. I* at ¶ 77.

## B. GAL Fees

{¶ 23} In her second assignment of error, Wife contends that the trial court erred and abused its discretion when it ordered that Wife pay half of the $25,290 of outstanding GAL fees.

{¶ 24} We review the trial court's allocation of GAL fees under an abuse-of-discretion standard. *Kovacic v. Kovacic*, 2010-Ohio-667, ¶ 4 (8th Dist.). Ohio Sup.R. 48.02(H)(3) states that when allocating GAL fees, trial courts shall consider "any relevant factor," including any of the following:

(a) The rate or amount of compensation of the guardian ad litem;

(b) The sources of compensation of the guardian ad litem, including the parties, any specialized funds allocated for payment of the guardian ad litem, or pro bono contribution of services by the guardian ad litem;

(c) The income, assets, liabilities, and financial circumstances of the parties, as demonstrated using an affidavit, testimony to the court, or evidence of qualification for any means-tested public assistance;

(d) The conduct of any party resulting in the increase of the guardian ad litem fees and expenses without just cause;

(e) The terms and *amount of any installment payments.*

(Emphasis added.)

{¶ 25} The trial court's numerical analysis of the allocation of GAL fees in the amended divorce decree is flawed. The order states that the outstanding GAL fees of $25,290 as of June 28, 2023, are to be divided between the parties, and allocates 50 percent, or $12,645, to each party. The order goes on to find that this allocation considers all payments made to date by each party. However, the GAL testified that as of June 15, 2023, she billed Wife and Husband equal amounts, that Wife made payments on her balance and owed $7,661, and that Husband only posted a bond and owed $14,433.75. In addition, on June 28, 2023, the GAL filed a brief with the trial court, which stated in part, as follows:

> The Guardian ad Litem has expended a total of 233.75 hours in this matter for a total fee of $35,062.50. A copy of the updated invoice list is attached hereto. During the pendency of the matter, Father has paid $1,500 towards the outstanding balance, Mother has paid $8,272.50 towards the outstanding balance. The balance due and owing is $25,290.

Thus, the record does not support the finding that the parties owed equal amounts to the GAL or that payments made by either party were considered in the trial court's allocation. Therefore, Wife's second assignment of error is sustained, and we

reverse and remand with instructions to the trial court to consider payments made by either party as required by Ohio Sup.R. 48.02(H)(3).

{¶ 26} For the reasons stated above, the trial court's orders related to attorney fees and GAL fees are reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

MARY J. BOYLE, P.J., and
ANITA LASTER MAYS, J., CONCUR